Argued January 17, affirmed April 11, petition for reconsideration
denied May 18, petition for review denied June 28, 1977

STATE OF OREGON, *Repondent,*
*v.*
MUREL LYNN McWILLIAMS, *Appellant.*
(No. 76-201 C, CA 6760)
562 P2d 577

Robert C. Cannon, Deputy Public Defender, Salem,

argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Lee and Tanzer, Judges.

LEE, J.

**LEE, J.**

Charged with "attempted murder"[1] defendant was convicted by jury verdict of the lesser offense of "assault in the first degree"[2] and sentenced to a term of imprisonment not to exceed 10 years. On appeal defendant argues that the trial court erred both when it failed to give his requested instruction on the defense of "excusable homicide by accident," and when it instructed the jury that, if in its opinion the evidence before it did not establish beyond a reasonable doubt that the defendant had attempted to cause the death of another human being, it might consider whether he was nonetheless guilty of the "lesser crime" of assault in either the first or second degree based upon the intentional or reckless infliction of "serious physical injury."[3]

The information upon which the prosecution of this case was based alleged in effect that the defendant

---

[1] "(1) * * * [C]riminal homicide constitutes murder when:

"(a) It is committed intentionally by a person who is not under the influence of an extreme emotional disturbance * * *." ORS 163.115(1)(a).

"A person is guilty of an attempt to commit a crime when he intentionally engages in conduct which constitutes a substantial step toward commission of the crime." ORS 161.405(1).

[2] "A person commits the crime of assault in the first degree if he intentionally, knowingly or recklessly causes serious physical injury to another under circumstances manifesting extreme indifference to the value of human life." ORS 163.185(1).

[3] "(1) A person commits the crime of assault in the second degree if he:

"* * * * *

"(b) Intentionally or knowingly causes physical injury to another by means of a deadly or dangerous weapon; or

"(c) Recklessly causes serious physical injury to another by means of a deadly or dangerous weapon." ORS 163.175(1).

The jury was also instructed on the elements of assault in the second degree, committed by intentionally causing physical injury—as opposed to serious physical injury—by means of a deadly weapon, as well as the elements of the crime of assault in the third degree, ORS 163.165. No exception to those additional instructions were taken below.

[ 103 ]

had, on April 4, 1976, intentionally shot one Vernon Rhodes in the chest with a .38 caliber revolver in an attempt to cause his death. The circumstances surrounding the shooting of Mr. Rhodes are relatively uncomplicated. During the evening of April 4, 1976, defendant entered a bar in Klamath Falls where he became involved in what appeared to those nearby to be a somewhat heated conversation with two female members of a party of some eight persons. At the height of this conversation one of the two women with whom defendant was speaking came to believe that defendant had threatened her and that she was, in fact, in imminent danger of being assaulted by him; at that point she requested Mr. Rhodes to come to her aid. In response to that request Mr. Rhodes, who prior to that evening had never seen defendant, arose from his seat at the table occupied by his party and began approaching defendant; seconds after he had arisen and before he realized defendant was armed, Mr. Rhodes suffered a gunshot wound to the chest. Denying that he had at any point threatened anyone, while acknowledging that the conversation preceding the shooting was less than cordial, defendant testified that he heard one of the women with whom he was speaking tell Mr. Rhodes to "get him or take him" and that Mr. Rhodes began approaching in what he regarded as a menacing fashion. According to defendant's testimony he then drew his revolver solely to dissuade Mr. Rhodes, whom he believed to be armed with a knife, from coming any closer, the bullet which struck Mr. Rhodes being accidentally discharged when, in the process of cocking the weapon, his hand slipped from the hammer.

At trial defendant took the position that because he had acted lawfully in self-defense when he drew his revolver in order to deter Mr. Rhodes from the use of "unlawful physical force,"[4] the subsequent "acciden-

---

[4] "* * * [A] person is justified in using physical force upon another person to defend himself or a third person from what he reasonably

tal" firing of the weapon could give rise to no criminal liability. Accordingly defendant requested the court to give an instruction which would in effect have informed the jury that he would not be guilty of *any* crime if it were to find, consistent with his theory of the case, that he had acted in self-defense when he drew his revolver *and* that the revolver thereafter discharged "accidentally"—i.e., if it were to find that the firing of the weapon was neither intended by defendant nor due to any reckless or criminally negligent conduct on his part.

Although the instruction framed by the defendant was not itself presented to the jury, the following were included among the instructions given:

"* * * Now, the defense of self defense ha[s] been raised. In considering this defense you must determine whether or not the defendant acted lawfully or unlawfully in using the gun in self defense. The [law] of self defense is based upon [what] a reasonably prudent person would do under the same or similar circumstances. * * * [A] person is justified in using physical force upon another person if the physical force used was used to defend himself from what he reasonably believed to be the use or imminent use of unlawful physical force, however, a person may use only that degree of force which he reasonably believes is necessary to his defense. A person is not justified in using a deadly physical force upon another person unless he reasonably believes that the other person is using or is about to use deadly physical force against him. * * * [D]eadly physical force, the term just used means physical force that under the circumstances in which it's used is readily capable of causing death or serious physical injury. Now, if you find the defendant was engaged in a lawful act in using the gun, you must then consider if the firing of the gun was intentional or reckless or accidental. In order to hold the defendant criminally responsible the State must prove his acts were intentional or reckless or criminally

believes to be the use or imminent use of unlawful physical force, and he may use a degree of force which he reasonably believes to be necessary for the purpose." ORS 161.209. *See also* ORS 161.219.

[ 105 ]

negligent. Regarding the defense of self defense the State must disprove that defense beyond a reasonable doubt * * *."

While it is true that a trial court is obligated to charge on all issues arising from the evidence and to present a defendant's theory of the case where that theory is supported by the evidence,[5] the court is not required to give a specifically requested instruction where it chooses to present different instructions that adequately cover the same subject.[6] As outlined above, the instructions given by the trial court did, in fact, set forth defendant's "theory of the case"; in effect, those instructions served to inform the jury that they were to return a verdict of "not guilty" unless they were satisfied beyond a reasonable doubt that the shot which wounded Mr. Rhodes was either fired intentionally by defendant without justification or was the product of his recklessness or criminal negligence. The failure to give the instruction framed by defendant did not, therefore, constitute error.

In his second assignment of error defendant contends that the court erred in giving the state's requested instructions on assault in the first degree and assault in the second degree committed recklessly,[7] arguing that the state failed to present any evidence

---

[5] *State v. Jennings,* 131 Or 455, 282 P 560 (1929); *State v. Forsyth,* 20 Or App 624, 533 P2d 176, Sup Ct *review denied* (1975); *State v. Ollison,* 16 Or App 544, 519 P2d 393 (1974); *State v. Suggs,* 13 Or App 484, 511 P2d 405 (1973).

[6] *State v. Leppanen,* 253 Or 51, 453 P2d 172 (1969); *State v. Gaylor,* 19 Or App 154, 527 P2d 4 (1974); *State v. Stark,* 7 Or App 145, 490 P2d 511 (1971).

[7] Defendant specifically objects to the following instructions:

"* * * [T]he first lesser included offense you will consider if you have determined that the defendant is not guilty beyond a reasonable doubt of attempted murder is assault in the first degree. Regarding that charge the law provides that any person who intentionally or recklessly causes serious physical injury to another person under circumstances manifesting extreme indifference to the value of human life is guilty of assault in the first degree. * * * [I]n order to establish assault in the first degree it's necessary for the State to prove each of the material elements of this charge beyond a reasonable doubt. * * * [T]he material elements [are] * * * that the defendant intentionally or

probative of the essential fact that Mr. Rhodes had suffered a "serious physical injury"—i.e., an injury "which creates a substantial risk of death or which causes serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ." ORS 161.015(7).

In the course of the trial of this case evidence had been introduced to show that the victim had been shot, from a distance of not more than three feet, with a large caliber handgun and that the bullet fired had passed completely through the victim's chest. Taken alone, that evidence was, we hold, sufficient to give rise to a jury question as to whether the injury inflicted had "create[d] a substantial risk of death" because it is within common experience to so infer.[8]

Accordingly, the court did not err in giving the instructions on first and second degree assault to which defendant objected.

Affirmed.

recklessly caused serious physical injury to Mr. Rhodes, [and] that the defendant caused the serious physical injury under circumstances manifesting extreme indifference to the value of human life. I have used the term serious physical injury and here's what that means, it means physical injury which creates substantial risk of death or which causes serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ. I have used the term intentionally, that means that the person acts with a conscious objective to cause the result. The term recklessly that I have used means that a person is aware of and consciously disregards a substantial and unjustifiable risk that serious physical injury to another person will result. The risk must be of such a nature and degree that a disregard of the risk constitutes a gross deviation from the standard of care that a reasonable person would observe in that situation. Now, the next lesser included offense I'll instruct you will be assault in the second degree. * * * Any person who recklessly causes serious physical injury to another person by means of a deadly weapon is guilty of assault in the second degree. Again in order to establish this charge the State must prove * * * beyond a reasonable doubt * * * that the defendant recklessly caused serious physical injury to Mr. Rhodes by means of a deadly weapon * * *."

[8] Cf., State v. Dillon, 24 Or App 695, 546 P2d 1090 (1976); State v. Dazhan, Sears, 15 Or App 300, 516 P2d 92 (1973); State v. Mayo, 13 Or App 582, 511 P2d 456, Sup Ct review denied (1973).