Argued and submitted July 3, 2001, affirmed February 13, 2002

Kathryn M. CHOUINARD,
*Appellant,*

*v.*

HEALTH VENTURES,
*Defendant,*

*and*

RADIOLOGY ASSOCIATES, P.C.,
an Oregon corporation,
dba Oregon Imaging Center;
and Gregory D. Kienzle,
*Respondents.*

16-96-11470; A109103

39 P3d 951

Tonya Kowalski argued the cause and filed the opening brief for appellant. With her on the reply brief were Gary M. Bullock, Wade V. Regier, and Bullock and Regier, P.C.

Lindsey H. Hughes argued the cause for respondents. With her on the brief were Noah Jarrett and Keating Jones Bildstein & Hughes, P.C.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

KISTLER, J.

**KISTLER, J.**

Plaintiff sued defendants for medical malpractice. The trial court directed a verdict in defendants' favor because the jury could not reasonably infer that defendants' breach of the standard of care caused plaintiff's injuries. We affirm.

We state the facts in the light most favorable to plaintiff. *Wheeler v. LaViolette*, 129 Or App 57, 60, 877 P2d 665 (1994). Plaintiff has a history of migraine headaches. In September 1993, she visited her physician, Dr. Pugsley, and reported that she had recently experienced disorientation and scattered thinking in addition to headaches. Pugsley attributed the symptoms to stress because plaintiff was working more than usual. She prescribed muscle relaxants, which relieved plaintiff's symptoms. In November, plaintiff reported that the headaches had returned and that they had become more frequent and severe. Plaintiff was expecting her second child at the time, and the doctor concluded that pregnancy and stress could be responsible for the symptoms.

Plaintiff did not see Pugsley again until March 1994. At that time, plaintiff complained of daily headaches. Pugsley prescribed additional medications and plaintiff's symptoms abated. In November, plaintiff complained of dizziness and sensitivity to light, but those symptoms disappeared in December. In January 1995, plaintiff returned to Pugsley. She reported that the medications were no longer working and that she had a headache more than 50 percent of the time. She also said that the pain she was experiencing was different from the pain associated with her earlier migraines. Pugsley prescribed additional medication, and plaintiff tried physical therapy.

On February 13, 1995, plaintiff reported that she had been listing to one side and feeling disoriented. Pugsley ordered a CT scan, which was performed that day. Dr. Kienzle, a neuroradiologist, analyzed the scan. Because Kienzle concluded that plaintiff's CT scan was normal, he did not order an MRI. Kienzle reported to Pugsley that he did not see any abnormality.

Plaintiff's symptoms worsened. She worked less, and then not at all. In late April and May, plaintiff was unable to care for her children and spent most of her time in bed or resting on the couch. Plaintiff reported vertigo, nausea, frequent vomiting, confusion, sensitivity to light, and disabling pain. Pugsley referred plaintiff to another neurologist, Dr. Lockfeld. Lockfeld treated plaintiff for an inner ear infection. Based on her lack of response to treatment, Lockfeld ordered an MRI in June 1995. That test revealed a three-centimeter tumor at the base of plaintiff's brain. Plaintiff underwent surgery in July, and most of the tumor was removed. Because the tumor was malignant, plaintiff also underwent radiation treatment.

Plaintiff sued Kienzle and Radiology Associates, P.C., claiming that Kienzle had negligently misread the February CT scan. She alleged that, as a result of Kienzle's negligence, the diagnosis and treatment of the tumor had been delayed approximately 100 days. She also alleged that the delay caused or aggravated various physical and emotional problems during that period. The primary component of her damages claim was for "pain and suffering during the delay, and emotional damages from her fears of recurrence, growth, and spread of the cancer and fears for her long term prognosis."

Several doctors testified at the trial. Dr. Miller, who performed the surgery, testified that, if the tumor had continued to grow untreated, plaintiff would have died. Lockfeld, plaintiff's neurologist, testified that he would have expected a brain tumor to produce "gradually worsening symptoms rather than episodic symptoms," as plaintiff had been experiencing. He explained that the symptoms plaintiff exhibited could be indicative of "a growing thing in the brain" but that, before the MRI, that "was not the only item under consideration." He testified that multiple sclerosis, for instance, could cause the same symptoms. He also said that he was "not certain that that lesion would cause headaches unless it was producing blockage of the fluid, spinal fluid, which apparently it was not." Dr. Gemmell, who conducted the radiation therapy after surgery, testified that plaintiff's tumor was of a "moderately high proliferative" type, meaning that its cells were multiplying and could spread. Plaintiff's husband

testified that plaintiff was "much better" after treatment, although she "still has problems with her balance and what-not and motor skills." Plaintiff testified that, after the surgery, she still has a lot of health problems and "can't walk more than a block" but has had several clear MRIs since her surgery.

At trial, plaintiff sought to recover damages for the four-month period from February 1995, when defendants failed to discover the tumor, to June 1995, when the tumor was diagnosed. She argued primarily that she was entitled to recover damages for both the physical pain and the attendant mental distress that she suffered during that period. Alternatively, she argued that she suffered emotional distress when she learned in June that defendants had failed to diagnose and remove her malignant tumor four months earlier. Although plaintiff's alternative theory sought only emotional distress damages, plaintiff argued that the presence of a growing tumor in her body was a sufficient physical impact to permit recovery of damages for psychic injury alone.

After plaintiff rested, defendants moved for a directed verdict. They argued that plaintiff had failed to prove that she had sustained any physical injury as a result of their alleged negligence.[1] Defendants did not dispute that the jury reasonably could find that plaintiff had suffered physical problems during the four-month period after defendants failed to discover plaintiff's tumor. They argued, however, that plaintiff had failed to introduce any expert testimony to prove that their negligence was the cause of those problems; that is, none of the doctors had testified to a reasonable medical probability that the undiagnosed tumor had caused plaintiff's physical problems. After reviewing the testimony, the trial court ruled: "I think I'm left with no choice but to grant the motion."

■■ On appeal, plaintiff argues that, under either theory of damages, the evidence was sufficient to send her malpractice claim to the jury. We examine each of plaintiff's theories in turn. Plaintiff argues initially that the jury reasonably

---

[1] Defendants assumed, for the purposes of their motion, that the jury could find that their failure to discover the tumor in February 1995 fell below the applicable standard of care.

could find that defendants' failure to discover her tumor resulted in both physical impairment and mental distress during the four-month period following Kienzle's diagnosis. On that point, plaintiff does not dispute that, as a general rule, a plaintiff in a medical malpractice case must offer expert testimony that, to a reasonable medical probability, the alleged breach of the standard of care caused the plaintiff's injuries. *See Cleland v. Wilcox*, 273 Or 883, 887-88, 543 P2d 1032 (1975); *Myers v. Dunscombe*, 64 Or App 722, 723, 669 P2d 388, *rev den* 296 Or 236 (1983).[2] She also does not dispute that no expert said that her tumor caused the physical symptoms she experienced. Plaintiff argues, however, that the evidence was sufficient in this case to permit the jury to infer causation even in the absence of that testimony.

■ Not every medical case requires expert testimony to establish either the standard of care or causation. *Fieux v. Cardiovascular & Thoracic Clinic, P.C.*, 159 Or App 637, 978 P2d 429, *rev den* 329 Or 318 (1999). We accordingly held in *Fieux* that no expert testimony was required to prove that a physician was negligent for leaving a clamp behind the patient's heart.[3] *See id.* Conversely, in *Howerton v. Pfaff*, 246 Or 341, 348, 425 P2d 533 (1967), the court held that the jury could not determine, without expert testimony, whether an accident caused the plaintiff's hernia, even though the nature of that condition was a matter of common knowledge. Similarly, in *Myers*, we affirmed a directed verdict because the plaintiff's medical expert offered no opinion as to causation, and at least one possible alternative cause was available to explain the plaintiff's "complicated medical question." 64 Or App at 723; *see also Cleland*, 273 Or at 888 (inconclusive testimony did not sufficiently explain cause of a complex medical condition).

---

[2] It is the settled rule in Oregon that " 'where injuries complained of are of such character as to require skilled and professional persons to determine the cause and extent thereof, the question is one of science and must necessarily be determined by testimony of skilled, professional persons.' " *Cleland*, 273 Or at 887 (quoting *Uris v. Compensation Dept.*, 247 Or 420, 424, 427 P2d 753 (1967)) (citations omitted).

[3] The question in *Fieux* was whether the physician had breached the applicable standard of care. The question here is whether plaintiff's symptoms were caused by a breach of that standard.

Although plaintiff argues that tumors and their effects on the body are a matter of common knowledge, we agree with the trial court that the issue of causation was a complex medical question that required expert testimony. *See Cleland*, 273 Or at 888. Lockfeld testified that a brain tumor ordinarily causes "gradually worsening" rather than episodic symptoms, but Pugsley described plaintiff's symptoms as episodic. Plaintiff's most consistent complaint was of severe headaches, but Lockfeld said that he was "not certain" that a tumor like plaintiff's would cause headaches, and Pugsley reported that plaintiff had suffered migraines "for years and years" before these events. The physicians who testified said that symptoms like plaintiff's could be explained by other causes, including stress, pregnancy, multiple sclerosis, or an inner ear infection.

The court explained in *Howerton* that "there is a wide difference between determining whether an injury actually exists and its cause." 246 Or at 347 (citations omitted). Similarly, expert medical testimony was needed to bridge that gap in this case and to ensure that the jury did not base its decision on mere speculation about the causes of plaintiff's vertigo, nausea, and headaches. To the extent that plaintiff seeks to recover damages for the physical symptoms and the attendant emotional distress that she experienced during the four-month period between February and June 1995, we agree with the trial court that the evidence of causation was not sufficient to go to the jury.

█ We turn to plaintiff's second theory of damages. Plaintiff notes that there was evidence that, as a result of defendants' failure to discover the tumor, it remained in her body for four additional months and continued to grow. She argues that, even if she failed to prove that she suffered any physical symptoms as a result of the growing tumor, the mere fact that the tumor was growing constitutes a physical impact that entitles her to recover damages for the emotional distress she experienced on later learning of its presence.

In analyzing plaintiff's argument, it is important to note what she does not argue. Plaintiff does not argue that she is entitled to recover emotional distress damages in the absence of any physical impact; that is, she does not argue

that she comes within any of the three recognized exceptions to the physical impact rule. *See Hammond v. Central Lane Communications Center*, 312 Or 17, 22-23, 816 P2d 593 (1991) (reaffirming Oregon's adherence to the physical impact rule and noting exceptions to it). More specifically, she does not argue that the standard of care applicable to defendants includes the duty to guard against psychic or emotional harm. *See Curtis v. MRI Imaging Services II*, 327 Or 9, 15-16, 956 P2d 960 (1998). Rather, she bases her second theory of damages solely on the proposition that the presence of a growing tumor was sufficient to establish a physical injury or impact that permits her to recover emotional distress damages.

Because plaintiff failed to prove that the tumor caused any of her physical symptoms, her alternative argument necessarily assumes that the tumor, while growing, did not affect her in any tangible way. Similarly, there is no evidence that the tumor grew to any appreciable extent. Rather, the most that the jury could infer from the evidence was that the tumor grew, to some unspecified extent, over the four-month period. That evidence does not constitute a sufficient physical impact to permit plaintiff's claim for emotional distress to go to the jury.

Neither the Supreme Court nor we have sought to define the minimum amount of bodily harm necessary to constitute a physical impact. *See Shoemaker v. Management Recruiters International*, 125 Or App 568, 573-74, 865 P2d 1331 (1993). In *Hammond*, however, the Supreme Court declined the plaintiff's invitation to depart from its cases requiring a physical impact as a prerequisite to recovery for negligently inflicted emotional distress. 312 Or at 26-27. The court's adherence to its precedent suggests that its earlier opinions, which required some form of physical injury, remain good law. *See Fehely v. Senders*, 170 Or 457, 461, 135 P2d 283 (1943). Consistently with *Fehely*, we have referred to the physical impact rule as requiring a "physical injury" that gives rise to emotional distress. *See Rustvold v. Taylor*, 171 Or App 128, 137, 14 P3d 675 (2000); *Curtis v. MRI Imaging Services II*, 148 Or App 607, 612, 941 P2d 602 (1997), *aff'd on other grounds* 327 Or 9, 956 P2d 960 (1998). We have recognized, however, that the notion of a physical injury also

includes offensive sexual touching that gives rise to emotional distress. *Wilson v. Tobiassen,* 97 Or App 527, 532, 777 P2d 1379, *rev den* 308 Or 500 (1989); *see Shoemaker,* 125 Or App at 573-74 (describing the offensive touching in both *Wilson* and that case as a form of "sexual molest[ation]").

■ At a minimum, the physical impact rule requires an act or omission that results in some perceptible physical effect on a plaintiff. We need not decide whether more is required to constitute a sufficient physical impact to warrant recovery of emotional distress damages.[4] It is sufficient to say, on the facts of this case, that the mere presence of a growing tumor that had no perceptible effect on plaintiff is not a sufficient physical impact to recover damages for negligently inflicted emotional distress. On this record, the trial court correctly granted defendants' directed verdict motion.

Affirmed.

---

[4] In *Norwest v. Presbyterian Intercommunity Hosp.,* 293 Or 543, 652 P2d 318 (1982), the court sought to articulate a more coherent policy for both the rule against allowing damages for negligently inflicted emotional distress and the exceptions to that rule. It reasoned:

"If there are few causes of action for psychic or emotional harm as such, the reason is not found in objections to monetary damages for harm of that nature. The reason may be found by focusing, not on the nature of the plaintiff's loss, but on the source and scope of the defendant's liability. This court has recognized common law liability for psychic injury alone when defendant's conduct was either intentional or equivalently reckless of another's feelings in a responsible relationship, or when it infringed some legally protected interest apart from causing the claimed distress, even when only negligently. * * * But we have not yet extended liability for ordinary negligence to solely psychic or emotional injury not accompanying any actual or threatened physical harm or any injury to *another* legally protected interest."

*Id.* at 558-59 (footnotes omitted; emphasis added). In explaining that psychic damages may be recovered when there is either actual physical harm or an "injury to *another* legally protected interest," the last quoted sentence suggests that the former harm is merely one species (albeit one that occurs most frequently) of an injury to a legally protected interest.