On respondent's petition for reconsideration filed August 14, 2002, reconsideration allowed; former opinion (182 Or App 130, 47 P3d 907) modified and adhered to as modified May 15, 2003

## ALLEN LEE LAMBERT,
### *Respondent,*

*v.*

## Joan PALMATEER,
### Superintendent,
### Oregon State Penitentiary,
### *Appellant.*

## 98C-15881; A108801

69 P3d 725

Steven H. Gorham for petitioner.

Before Edmonds, Presiding Judge, Deits, Chief Judge, and Armstrong, Judge.

EDMONDS, P. J.

Armstrong, J., concurring in part, dissenting in part.

## EDMONDS, P. J.

Petitioner seeks reconsideration of our decision that reversed the trial court's judgment granting post-conviction relief. *Lambert v. Palmateer*, 182 Or App 130, 47 P3d 907 (2002). We allow the petition and, on reconsideration, adhere to our former opinion as modified.

We review the facts briefly for purposes of the analysis that follows. In August 1995, petitioner and Boyum, the victim in the underlying case, were involved in an altercation. At the time, Boyum lived in a van that was parked in a vacant lot. Petitioner approached the van while yelling at Boyum. Petitioner then broke out the back window of the van with a piece of pipe. Boyum recognized petitioner and got out of the van to prevent petitioner from further damaging it. Boyum testified that he moved to the rear of the van to speak with petitioner but he could not remember what occurred after that point in time. Although the state and petitioner disagree regarding what happened thereafter, it is undisputed that Boyum's head was hit with the pipe and that he was subsequently taken to a hospital.

At the hospital, Boyum was somnolent and could give only "yes" and "no" answers to a physician's questions. The physician observed that Boyum smelled strongly of alcohol; when asked, Boyum admitted to drinking that night. Boyum complained of a headache. A CT scan showed that Boyum had a "small hemorrhage in the medulla, a left basilar skull fracture which extended into the temporal bone, and a small air fluid level * * * in the sphenoid sinus." He also had a cut on his left forehead that required four stitches. The physician decided to admit Boyum to the hospital overnight. He was discharged the next morning.

The state charged petitioner with assault in the first degree.[1] Petitioner waived his right to a jury trial, and the

---

[1] ORS 163.185 provides, in part:

"A person commits the crime of assault in the first degree if the person intentionally causes serious physical injury to another by means of a deadly or dangerous weapon."

case was tried to the court. At trial, Boyum testified regarding the nature of his injuries and his belief that the resulting one-inch scar on his forehead would likely not go away. Petitioner offered approximately 20 to 30 pages of medical records detailing the injury. At the close of the state's case, petitioner's trial counsel moved for a judgment of acquittal, arguing, in part, that the state had failed to offer evidence to prove the "serious physical injury" element of first-degree assault.[2] Counsel contended that there was no evidence that Boyum's injuries had created a substantial risk of death or that the scar on Boyum's forehead constituted serious and protracted disfigurement. The state responded that it did not "contend[ ] that this injury was life-threatening" but rather that the injury had caused serious and protracted disfigurement.[3]

The trial court denied the motion for judgment of acquittal and, after petitioner presented his case, convicted him of first-degree assault. The court explained:

"Now, on the issue of serious physical injury, the Court finds that [the injury] both created a substantial risk of death and serious and protracted disfigurement. And here are my findings on substantial risk of death. Exhibit 101 are the medicals from Portland Adventist. The [victim] was taken by ambulance to their critical care unit in an altered mental state. He had seizure activity, depression of his central nervous system. He was semi-conscious. The patient could only mumble in response to pain and questions. He

[2] ORS 161.015(8) provides:

" 'Serious physical injury' means physical injury which creates a substantial risk of death or which causes serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ."

[3] The state reiterated that position in its closing argument:

"Now, *I am not going to argue to the Court that this was a life-threatening injury. That would be rather foolish for me* * * *. So I think that Mr. Boyum was, frankly, lucky in this way. And as a result of his luck, [petitioner] gets lucky, as well. This was not life-threatening, it appeared. [There] was a time when I think they treated it as such, when he first got to the hospital and they ran him through the CAT scans * * *.

"But, really, *the case here for serious physical injury deals with that permanent disfigurement*, serious permanent disfigurement to the forehead of Mr. Boyum."

(Emphasis added.)

was obtund[e]nt, which is nature's way, of course, of shutting the body down prior to death or prior to pain that cannot be taken.

"The [victim] was X-rayed and [had] a CAT scan on his head * * *. Mr. Boyum's head was fractured at the—it was basilar skull fracture, and there was a clear fracture in the X-ray of the left temporal bone. This caused bleeding into the brain in several areas. There was subarachnoid hemorrhage, which bled into the right temporal lobe of the brain. It bled into the right parietal lobe of the brain. There was blood in his left sphenoid sinus, and they thought, in addition, there might have been a medullar hemorrhage, as well. This victim, Mr. Boyum, was within one inch of his life, and that is serious physical injury.

"Now, on serious and protracted disfigurement, he has about a two-inch-long, half-inch-wide divot in his left forehead in the temporal region, which I can see easily at 40 feet, as he sits here and I look at him at this moment. This is something that is not hidden by any clothing. It's in his head. This is serious and protracted disfigurement."

At sentencing, the court imposed a sentence under Ballot Measure 11. On appeal, petitioner's counsel challenged the constitutionality of the Measure 11 sentence but did not challenge the trial court's denial of the motion for judgment of acquittal. We affirmed the criminal judgment without opinion, and the Supreme Court denied review. *State v. Lambert*, 150 Or App 367, 944 P2d 1004, *rev den*, 326 Or 82 (1997).

Petitioner subsequently filed this petition for post-conviction relief, alleging, among other things, that he had received constitutionally inadequate legal assistance from appellate counsel. At the trial on his post-conviction relief claims, petitioner offered significantly fewer medical records concerning Boyum's head injury than had been offered at the criminal trial. His evidence consisted of a three-page emergency room report that summarized the procedures performed on Boyum in the emergency room and the diagnosis of his condition, and a one-page chart report that showed that Boyum's condition had not worsened between the time that he left the emergency room and the time that he was discharged from the hospital. Neither petitioner nor defendant

offered the balance of the medical records that had been received at the criminal trial.

After hearing the evidence, the post-conviction relief court granted relief in the form of a new trial of the assault charge. It explained its decision in a letter opinion:

"At trial the only evidence regarding the injury was from the victim and the medical records.* * * Although the description of the injury sounds like it might be a serious injury[,] there was no medical evidence to support whether this injury created a substantial risk of death. The trial court in its findings used this information to speculate that it was life threatening, however the state did not introduce any evidence to support this finding, therefore, it was purely speculation. In addition, it is incredible and flies in the face of this being a life threatening injury when the only course of treatment was for the victim to spend one night in the hospital and no other treatment. The judge also quoted a part of the medical report which discusses the victim being disoriented and unresponsive, but the victim was intoxicated and the CT was done because of his intoxication. The trial court also made some statement about seeing a 'dent' in the [victim's] head, however, there was no evidence that this was connected to this assault.

"* * * Here the only evidence about how long the scar would be there was the victim's testimony that he did not think it would go away. There was no medical testimony about this issue.

"* * * These cases [*State v. Moyer*, 37 Or App 477, 587 P2d 1054 (1978), and *State v. Dazhan, Sears*, 15 Or App 300, 516 P2d 92 (1973),] support the position that a scar which was less than one inch long was not sufficient to sustain a finding that there was protracted disfigurement."

The state appealed the grant of post-conviction relief. In our original decision, we held that petitioner's appellate counsel had provided constitutionally adequate assistance to petitioner in the criminal case. We concluded that petitioner had failed to establish that he had been prejudiced by appellate counsel's failure to assign error on appeal to the denial of the motion for judgment of acquittal. We reasoned that the record contained evidence from which the trial court could have found that Boyum's injury had caused both

a substantial risk of death and serious and protracted disfigurement; it followed that the failure to assign error to the denial of the motion for judgment of acquittal did not prejudice petitioner. On reconsideration, we conclude that the post-conviction relief court was correct that constitutionally competent appellate counsel would have assigned error to the denial of petitioner's motion for judgment of acquittal. However, we hold that petitioner was not prejudiced because, even had appellate counsel assigned error to the denial, the result of the appeal would not have been different. We therefore adhere to our original decision as modified.

■·■    We review a post-conviction relief court's decision for "errors of law and whether the facts found by the post-conviction [relief] court are supported by the record." *Smart v. Maass*, 148 Or App 431, 434, 939 P2d 1184, *rev den*, 326 Or 62 (1997). To prevail on a claim for inadequate assistance of appellate counsel for failure to assert a claimed error, a petitioner "must establish (1) that a competent appellate counsel would have asserted the claim[ed error], and (2) that had the claim of error been raised, it is more probable than not that the result would have been different." *Guinn v. Cupp*, 304 Or 488, 496, 747 P2d 984 (1987). Put another way, petitioner in this case must show that he was prejudiced by appellate counsel's inaction. *See id.*

■    As a threshold matter, we address defendant's contention that the record in the post-conviction proceeding was inadequate to permit the post-conviction relief court to determine whether petitioner had received constitutionally adequate assistance from appellate counsel. Defendant contends that petitioner was required to submit at the post-conviction trial all of the medical evidence that was admitted at the criminal trial in order to establish that he was prejudiced by appellate counsel's failure to assign error to the denial of his motion for judgment of acquittal. We do not address that issue because defendant failed to preserve it below.

■    The next issue is whether competent appellate counsel would have assigned error to the trial court's denial of petitioner's motion for judgment of acquittal. That motion was based on the ground that the state had failed to prove the elements of first-degree assault, specifically, that the state

had failed to prove both that the injury was intentional and that the injury constituted a serious physical injury. On the latter issue, petitioner argued to the trial court that the state had failed to prove that the injury had caused a substantial risk of death or serious and protracted disfigurement. That argument was sufficient to preserve the error below. Any reasonable appellate counsel reading the trial court transcript would have identified the claim of error and, after reviewing the record, would have recognized that it had merit. That is especially true in light of the fact that the state had conceded at the criminal trial that Boyum's injury had *not* created a substantial risk of death and had also commented that the appellate courts had provided little guidance on what constitutes serious and protracted disfigurement. *See Danielson v. Maass,* 123 Or App 366, 370, 860 P2d 286, *rev den,* 318 Or 170 (1993) (error preserved below should have been raised on direct appeal if it had merit).

Additionally, there was no apparent tactical advantage to petitioner arising from a decision not to raise the error on appeal. Petitioner would not suffer any detriment if the assignment of error were unsuccessful, and the result of a successful appeal would have been reversal of the conviction. *See, e.g., Layton v. Hall,* 181 Or App 581, 588-89, 47 P3d 898 (2002) ("A competent decision to raise, or to [forgo], an objection may involve a variety of considerations, including the likelihood of success, the benefit to the client if successful, and any countervailing detriment if unsuccessful."). In light of those facts, we conclude that reasonable appellate counsel would have assigned error to the trial court's denial of petitioner's motion for judgment of acquittal and would have argued on appeal that the state had failed to establish the serious physical injury element of first-degree assault.

We turn to the second prong of the *Guinn* test, which focuses on whether petitioner was prejudiced by appellate counsel's failure to raise the denial of the motion for a judgment of acquittal on direct appeal. In other words, the issue concerns the likelihood of success of those arguments had they been raised. The issue necessitates an analysis of the merits of the assignment of error that petitioner's appellate counsel failed to make.

A conviction for first-degree assault requires that the victim suffer a "serious physical injury." ORS 163.185. ORS 161.015(8) defines a serious physical injury to be an injury that "creates a substantial risk of death or [that] causes serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ." Because the trial court concluded that Boyum's injury had caused both a substantial risk of death and serious and protracted disfigurement, we will discuss each in turn.

■    Neither party presented expert testimony explaining or interpreting the medical evidence regarding the nature and extent of the injuries suffered by Boyum.

> "It is the settled rule in Oregon that where injuries complained of are of such character as to require skilled and professional persons to determine the cause and extent thereof, the question is one of science and must necessarily be determined by testimony of skilled, professional persons."

*Chouinard v. Health Ventures*, 179 Or App 507, 512 n 2, 39 P3d 951 (2002) (internal quotation marks omitted). Only if the risk posed by an injury is apparent to a lay person is such expert testimony unnecessary. *See, e.g., State v. McWilliams*, 29 Or App 101, 107, 562 P2d 577, *rev den*, 279 Or 1 (1977) (evidence that victim had been shot with a large caliber handgun from a distance of no more than three feet and that bullet had passed directly through victim's chest was sufficient to raise a jury question of whether the injury posed a substantial risk of death because it is in "common experience to so infer"). Here, whether Boyum's injuries were life-threatening or created a substantial risk of death is not apparent to a lay person. Thus, expert testimony relating to the risk caused by the injuries was necessary. We accordingly agree with the post-conviction relief court that, as a matter of law, the record was insufficient to support a conviction for assault in the first degree as a result of a "serious physical injury" based on a "substantial risk of death." *See* ORS 161.015(8).

We next examine whether, under ORS 161.015(8), the conviction for assault in the first degree would have been

affirmed on direct appeal on the basis of "serious and protracted disfigurement." We note that the record before us contains no pictorial evidence of Boyum's injury. However, unlike the post-conviction relief court and this court, the trial court, as the finder of fact in the criminal case, had an opportunity to see, firsthand, Boyum's injury and to evaluate the severity of the disfigurement. The scar itself was demonstrative evidence that conveyed a "firsthand sense impression to the trier of fact." 2 *McCormick on Evidence* § 21, 3 (4th ed 1992). This kind of demonstrative evidence is often "the best and most direct evidence of a material fact," in this case, "the nature of [the] assault[.]" *Id.* at 21-22.

In that regard, Boyum, while on the witness stand, pointed to the location where he was injured, described it as "the left corner of [his] forehead," and exhibited the injured area for the trial court to inspect:

> "[Counsel:] Now, Mr. Boyum, with the Court's permission, I want you to twist your chair a bit so that you can lean over close to the Judge so he can get an opportunity to inspect the area[.]"

After inspecting the injury, the court later described it as "a two-inch-long, half-inch-wide divot in [Boyum's] left forehead in the temporal region [visible from] 40 feet [away]." What the court saw when it looked at Boyum's forehead is demonstrative evidence. The trial court's description of what it observed, while not evidence, is explanatory regarding the import of that demonstrative evidence to the factfinder. The court's explanation demonstrates an arguable conflict in the evidence about disfigurement. Specifically, in contrast to what the court observed in the courtroom, the medical records indicate that the cut on Boyum's forehead was about two centimeters long, and other evidence suggests that the scar was one inch in size.

Because, in this post-conviction case, we analyze the evidence to determine the result if the issue had been raised by appellate counsel, we review the denial of the motion of judgment of acquittal as we would on direct appeal. On a motion for judgment of acquittal, all conflicts in the evidence are resolved in favor of the state. *State v. Krummacher*, 269 Or 125, 137-38, 523 P2d 1009 (1974). Consequently in this

case, there is evidence from which a reasonable factfinder could find that Boyum suffered a "two-inch-long, half-inch-wide divot" to his left forehead that was easily visible from 40 feet away.

Based on the above evidence, the legal question on appeal would have become whether an injury of that description constitutes "serious and protracted disfigurement" under ORS 161.015(8). For example, in *State v. Dazhan, Sears*, 15 Or App 300, 305, 516 P2d 92 (1973), we held that a permanent scar under the victim's right eye that resulted from a punch did not constitute serious and protracted disfigurement. Further, in *State v. Moyer*, 37 Or App 477, 479-81, 587 P2d 1054 (1978), we held that two scars, one where the victim was stabbed with a knife and the other from subsequent surgery, did not did not meet the statutory requirement:

> "The penetrating wound, which was located just to the left of the sternum, left a scar one to one and a quarter inches long and one-eighth of an inch wide. A second scar from the surgery begins four inches below the neck and extends downward for six to seven inches; it is approximately one quarter of an inch wide. Both scars were red and raised at the time of the trial which was held two months after the stabbing.
>
> "* * * * *
>
> "[W]e find that the two scars, *located as they are in an area normally covered by clothing*, do not constitute the sort of injury contemplated in [the statute]."

(Emphasis added.)

In contrast, Boyum's scar is located on the temporal region of his forehead, unlike the scars at issue in *Moyer*, which were generally concealed by clothing. Further, the scar appeared to the trial court as a one-half-inch-wide "divot" that could be observed from some distance and was in a conspicuous location. A *divot* in a victim's forehead is a significantly different disfigurement from the nature of the scars at issue in *Dazhan* and *Moyer*. As a result, we conclude that the divot in Boyum's head described by the trial court constituted serious and protracted disfigurement and, thus, "serious physical injury" within the meaning of ORS 161.015(8).

■ Apparently, the post-conviction relief court disagreed that there is evidence in the record that Boyum suffered a serious physical injury. We think that that disagreement arises out of the post-conviction relief court's own findings made on the record before it. However, the issue before the post-conviction relief court was not which evidence it believed or found persuasive. Rather, the issue was whether a motion for directed verdict of acquittal would have been successful on appeal. *See State v. Rose,* 311 Or 274, 281, 810 P2d 839 (1991) (challenge to sufficiency of evidence reviewed to determine if there is evidence in the record from which the trier of fact could find the crime had been proved). As discussed above, there was demonstrative evidence before the trial court regarding the nature of Boyum's injury. That properly created an issue of fact regarding whether "serious physical injury" occurred. Consequently, the trial court did not err when it denied petitioner's motion for a judgment of acquittal. The result of the appeal in his criminal case would not have been different if his appellate counsel had assigned error to the denial of his motion for judgment of acquittal. It follows that petitioner was not prejudiced by appellate counsel's failure to raise the issue and that the post-conviction relief court erred when it granted post-conviction relief to petitioner.

Reconsideration allowed; former opinion modified and adhered to as modified.

**ARMSTRONG, J.,** concurring in part, dissenting in part.

The majority concludes on reconsideration in this post-conviction case that petitioner failed to establish that he had suffered prejudice as a result of the failure by his appellate attorney to assign error to the denial of his motion for a judgment of acquittal. It reasons that we would have affirmed the conviction on appeal if the denial of the motion had been assigned as error, so petitioner suffered no prejudice from counsel's failure to assign that error on appeal. I respectfully disagree. I believe that we would have reversed the conviction on appeal if the denial of the motion had been assigned as error, so I would affirm the post-conviction court's decision to grant relief to petitioner.

I agree with the majority's decision to grant reconsideration and with most of its discussion of the substantive issues in this case. Where I part company with the majority is with its analysis of how we would have resolved an appeal in the criminal case that challenged the sufficiency of the evidence to support petitioner's conviction for first-degree assault for having caused the victim, Boyum, to suffer serious and protracted disfigurement.

A person commits first-degree assault "if the person intentionally causes serious physical injury to another by means of a deadly or dangerous weapon." ORS 163.185. "Serious physical injury" is defined in ORS 161.015(8) to mean

"physical injury which creates a substantial risk of death or which causes serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ."

After the close of the evidence in the criminal trial, the court convicted petitioner of first-degree assault, based on its finding that the injury that petitioner had inflicted had created a substantial risk of death and had caused serious and protracted disfigurement. As to the latter basis for the conviction, the court said on the record that Boyum had

"about a two-inch-long, half-inch-wide divot in his left forehead in the temporal region, which I can see easily at 40 feet, as he sits here and I look at him at this moment. This is something that is not hidden by any clothing. It's in his head. This is serious and protracted disfigurement."

The majority reasons that the court's statement about the two-inch-long, half-inch-wide divot is supported by the demonstrative evidence that was submitted at trial when the prosecutor asked Boyum "to twist [his] chair a bit so that [he could] lean over close to the [j]udge so [that the judge could] get an opportunity to inspect the area" above Boyum's left temple where he had been struck. Because it concludes that there is evidence to support the court's finding about the injury, it then resolves whether a two-inch-long, half-inch-wide divot on Boyum's forehead constitutes serious and protracted disfigurement. 187 Or App at 537-38. It concludes that it does, which leads it to conclude that we would have

affirmed petitioner's conviction for first-degree assault had the motion for judgment of acquittal been assigned as error on appeal.

The flaw in the majority's reasoning is its treatment of the demonstrative evidence in the record. If the demonstrative evidence were the only evidence in the record, then the majority's treatment of it would be correct. But it is not. At the same time that the prosecutor asked Boyum to turn toward the judge, the prosecutor asked Boyum a series of questions about the injury:

"Q. Now, with the Court's permission, I would like you to briefly describe that so the record's got—It's about a one-inch scar to that region of your forehead; is that correct?

"A. Yes, sir.

"Q. Is that the area that you received four stitches to?

"A. Yes, sir.

"Q. Is there any belief on your part, that that scar is going to disappear?

"A. No, sir."

The state also introduced as an exhibit a photograph of the scar, and defendant introduced medical records that described the injury as a two-centimeter cut that was treated and closed by four stitches. A two-centimeter cut is a cut that is less than one inch in length. In sum, the evidence that could be reviewed on appeal, that is, the evidence *other* than the demonstrative evidence, indicates that the injury produced a one-inch scar, *not* a two-inch-long, half-inch-wide divot.[1]

Appellate courts have consistently emphasized the importance of creating a record that can permit meaningful

---

[1] Although the evidence other than the demonstrative evidence appears to be consistent in its characterization of the scar, the photograph that the state introduced at the criminal trial is not in the post-conviction record. Consequently, it is not possible to determine whether it contradicted or supported the other evidence about the scar that was subject to review on appeal. Presumably, if the photograph were helpful to defendant in the post-conviction proceeding, that is, if the photograph supported the existence of a two-inch-long, half-inch-wide divot in Boyum's forehead, then defendant would have introduced it at the post-conviction trial.

appellate review of trial court rulings. That means that parties must take steps to ensure that demonstrative evidence is turned into tangible evidence that can be evaluated on appeal.[2] The parties did that here. The prosecutor described the scar for the record as about a one-inch scar, and he introduced a photograph of it. Neither petitioner nor the court raised an issue about whether that evidence adequately conveyed the nature of the scar for purposes of appellate review. Because they did not, I believe that we are bound by that evidence in assessing whether petitioner would have prevailed on appeal in his challenge to his conviction for first-degree assault for causing Boyum to suffer serious and protracted disfigurement. We cannot treat the demonstrative evidence as support for a greater injury, because it would undo the very effort that the parties properly undertook to create a record that could be reviewed on appeal. Hence, I believe that the issue for us is whether a one-inch scar above Boyum's left temple, rather than a two-inch-long, half-inch-wide divot, constitutes serious and protracted disfigurement.

I would conclude that it does not. While a one-inch scar above Boyum's left temple is a visible disfigurement, it is not a disfigurement that a factfinder reasonably could find to be serious. Consequently, I believe that petitioner would have prevailed on appeal if appellate counsel had assigned error to the denial of the motion for judgment of acquittal, and that the post-conviction court properly granted relief to petitioner from his conviction. I respectfully dissent from the majority's contrary conclusions.

---

[2] *See, e.g., Smith et ux v. Dressler et al,* 212 Or 322, 323-24, 319 P2d 578 (1957).