246 P.3d 26 (2010)
240 Or. App. 167
STATE of Oregon, Plaintiff-Respondent,
v.
Maximilliano ALVAREZ, Defendant-Appellant.
C072848CR; A139512.
Court of Appeals of Oregon.
Argued and Submitted September 28, 2010.
Decided December 29, 2010.
*27 Eric Johansen, Senior Deputy Public Defender, argued the cause for appellant. With him on the briefs was Peter Gartlan, Chief Defender, Appellate Division, Office of Public Defense Services.
Jeff J. Payne, Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.
Before SCHUMAN, Presiding Judge, and WOLLHEIM, Judge, and ROSENBLUM, Judge.
SCHUMAN, P.J.
Defendant appeals from a judgment of conviction stemming from an apparently gang-related assault in which he used a metal baseball bat to beat a 16-year-old victim, and an accomplice used a metal rod. A jury returned guilty verdicts on counts of assault in the first degree, assault in the second degree, and three counts of unlawful use of a weapon. Two chargesfirst-degree assault and one count of unlawful use of a weaponalleged that defendant himself beat the victim with the bat. Two other charges-second-degree assault and another count of unlawful use of a weaponalleged that defendant aided and abetted his accomplice in beating the victim with a metal rod. On appeal, defendant advances three assignments of error. First, he argues that the court erred in denying his motion for a judgment of acquittal on the count of first-degree assault because the state did not present sufficient evidence that the assault caused "serious physical injury," a necessary element of that crime. Second, he argues that the two metal bat convictions should have merged because the offenses were part of a single criminal episode and all of the elements of the unlawful use conviction were subsumed in the first-degree assault conviction. Third, he argues that, for the same reasons, the two metal rod convictions should have merged. We affirm.
The relevant facts, consistent with the jury verdict and therefore binding on us, are few. Defendant, wielding a metal baseball bat, and his accomplice, wielding a metal rod, beat the victim for approximately seven minutes. In the first minute of the encounter, defendant hit the victim on the head; the impact of the bat against the victim's skull made a "ding"-like sound and knocked the victim onto the ground, rendering him unconscious for a short time. The head wound exposed the victim's skull, had to be closed with four surgical staples, and left a scar that was visible to the jury five months after the attack. Other wounds included a bruised hand and thigh.
In his first assignment of error, defendant argues that the injuries were not serious enough to amount to "serious physical injury" under ORS 163.185(1)(a). That statute provides that a person commits first-degree assault if he or she "[i]ntentionally causes serious physical injury to another person by means of a deadly or dangerous weapon." A "serious physical injury," in turn, is defined as one that "creates a substantial risk of death or which causes serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ." ORS 161.015(8). According to defendant, although *28 a juror could conclude that hitting a person on the head with a metal baseball bat is the kind of action that can potentially cause a "substantial risk of death," the statute requires the state to prove that the injury actually inflicted on the victim caused a substantial risk of death. Thus, for example, a mere glancing blow to the side of the head, even if it were inflicted with a metal bat, might not create a substantial risk of death. Defendant's argument is that, although the state may have presented sufficient evidence to permit a juror to find that defendant's action was one that could potentially have created a substantial risk of death, the state presented no evidence to support a finding that the injury that defendant actually inflicted presented a substantial risk of death. Further, defendant cites State v. Mayo, 13 Or.App. 582, 511 P.2d 456 (1973), for the proposition that an injury that creates a mere possibility of death, as opposed to a substantial risk of death, is not a "serious physical injury" for the purposes of first-degree assault. In response, the state does not contest the argument that it is the actual injury, and not the type of injury-inflicting action, that must create the substantial risk of death; rather, the state points to State v. McWilliams, 29 Or.App. 101, 107, 562 P.2d 577 (1977), for the proposition that the applicable test is whether a juror, relying on "common experience," could infer that the injury is sufficiently grave. In that case, "the victim had been shot, from a distance of not more than three feet, with a large caliber handgun and * * * the bullet fired had passed completely through the victim's chest." Id. We held that, taken alone, that evidence was "sufficient to give rise to a jury question as to whether the injury inflicted had `create[d] a substantial risk of death.'" Id. (alteration in original). According to the state, under the test articulated in McWilliams, the court properly denied defendant's motion for a judgment of acquittal.
A blow to the head that is hard enough to cause a "ding" sound, to inflict a wound so deep as to expose the skull, to require four staples for closure, and to render the recipient unconscious, is, we acknowledge, not as obviously life-threatening as a large caliber bullet wound through the chest. We conclude, however, that a juror relying on common experience could find that the wound created a substantial risk of death. Regardless, we also agree with the state that a scar on the scalp, visible five months after the injury, qualifies as a "protracted disfigurement," ORS 161.015(8), and therefore as a "serious physical injury," ORS 163.185(1)(a). It may be true that the victim could conceal the scar by letting his hair grow, but we decline to hold that an injury is not disfiguring merely because, by limiting his or her fashion or style options, the victim can conceal it. We therefore reject defendant's first assignment of error.
In defendant's merger arguments, he maintains that the two counts involving his attack with the metal bat should merge and the two aid-and-abet counts involving his accomplice's attack with a metal rod should merge. Merger here is governed by ORS 161.067(1):
"When the same conduct or criminal episode violates two or more statutory provisions and each provision requires proof of an element that the others do not, there are as many separately punishable offenses as there are separate statutory violations."
It is undisputed that, with respect to each pair of verdicts for which merger is sought, defendant violated two statutory provisions. The question is whether, in either pair of convictions, each of the statutory provisions requires proof of an element that the other does not. Generally, only the statutory elements of the offenses are compared; the facts as alleged in the indictment or found by the factfinder are not relevant. State v. Walraven, 214 Or.App. 645, 653-54, 167 P.3d 1003 (2007), rev. den., 344 Or. 280, 180 P.3d 702 (2008); State v. Sumerlin, 139 Or.App. 579, 584, 913 P.2d 340 (1996). However, when a statute contains alternative forms of a single crime (as, for example, unlawful use of a weapon, which can be committed either by (1) carrying or possessing a dangerous weapon or by (2) attempting to use one), we will look to the indictment to determine which form is charged, and we use the elements of the charged version in the merger *29 analysis. State v. Cufaude, 239 Or.App. 188, 192-93, 244 P.3d 382 (2010), see also State v. Crotsley, 308 Or. 272, 278-80, 779 P.2d 600 (1989) (for purposes of merger, court considered elements of the version of first-degree rape as charged). Further, once we rely on the indictment to determine which of the alternative forms of the crime are at issue, we disregard particular facts alleged in the indictment or proved at trial. Cufaude, 239 Or.App. at 192-93, 244 P.3d 382 (the court does not consider evidence adduced at trial; rather, it relies on "pleaded elements").
We begin with the metal bat counts. Unlawful use of a weapon, ORS 166.220, provides, in part:
"(1) A person commits the crime of unlawful use of a weapon if the person:
"(a) Attempts to use unlawfully against another, or carries or possesses with intent to use unlawfully against another, any dangerous or deadly weapon * * *[.]"
As we have recently noted, that statute presents alternative ways in which a person can commit the crime: by attempting to use a deadly weapon unlawfully, or by carrying or possessing a deadly weapon with intent to use it unlawfully. Cufaude, 239 Or.App. at 192, 244 P.3d 382. Here, Count 2 of the indictment alleged that defendant "did unlawfully and with the intent to use unlawfully against another, carry or possess a dangerous weapon, to-wit: a bat." Thus, the pleaded elements of ORS 166.220(1)(a), with respect to the bat count, are: (1) carrying or possessing; (2) a dangerous or deadly weapon; (3) with intent to use it unlawfully; (4) against another. ORS 163.185 provides, in part:
"(1) A person commits the crime of assault in the first degree if the person:
"(a) Intentionally causes serious physical injury to another by means of a deadly or dangerous weapon[.]"
Assault I, therefore, has the following elements: (1) intentionally; (2) causing serious physical injury; (3) to another; (4) by means of a dangerous or deadly weapon. Defendant argues that all of the pleaded elements in unlawful use of a weapon are subsumed within the elements of first-degree assault, or, in other words, unlawful use of a weapon does not contain any elements that are not also contained in first-degree assault; a person who intentionally inflicts serious physical injury with a dangerous or deadly weapon necessarily carries or possesses the weapon, and intentionally used it unlawfully. We disagree. It is possible to inflict serious physical injury with a dangerous or deadly weapon without either possessing or carrying it. In State v. Reed, 101 Or.App. 277, 279, 790 P.2d 551, rev. den., 310 Or. 195, 795 P.2d 554 (1990), for example, the defendant was convicted of assault in the second degree for repeatedly striking the victim's head against a concrete sidewalk, which, obviously, he neither possessed nor carried. Noting that "ORS 161.015(1) defines a dangerous weapon as `any instrument, article or substance which under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or serious physical injury,'" we held that the sidewalk was a dangerous or deadly weapon for purposes of the assault statute. Id. Thus, ORS 163.185(1)(a) contains an elementinflicting serious physical injury on another personthat is not present in ORS 166.220(1)(a), and ORS 166.220(1)(a) contains an elementcarrying or possessing a dangerous or deadly weaponthat is not one of the pleaded elements of ORS 163.185(1)(a).[1]
The two metal rod counts allege unlawful use of a weapon and second-degree assault. Like the unlawful use count regarding the bat, the unlawful use count regarding the rod alleged that defendant committed the crime by carrying and possessing a dangerous weapon. The second-degree assault count regarding the rod echoed the first-degree assault count regarding the bat, except that the first-degree count charged that defendant "unlawfully and intentionally" caused serious physical injury, whereas the second-degree assault count alleged that the *30 act was committed "unlawfully and knowingly," using the language of the second-degree assault statute.
"(1) A person commits the crime of assault in the second degree if the person:
"(a) Intentionally or knowingly causes serious physical injury to another[.]"
ORS 163.175. For purposes of merger with unlawful use of a weapon in this case, the differences between first-degree assault and second-degree assault are not relevant. ORS 163.175(1)(a) contains an elementcausing serious physical injury to anotherthat ORS 166.220(1)(a) does not, and ORS 166.220(1)(a) contains an elementcarrying or possessing a dangerous or deadly weaponthat ORS 163.175(1)(a) does not. Thus, the court did not err in failing to merge the two convictions.[2]
Affirmed.
NOTES
[1] In State v. Ryder, 230 Or.App. 432, 216 P.3d 895 (2009), we held that the court plainly erred in failing to merge second-degree assault with unlawful use of a weapon. In that case, however, the defendant was charged with unlawful use of a weapon with the intention of using it unlawfullythe other method of committing the offense.
[2] In Cufaude, we held that the court did not commit plain error in failing to merge second-degree assault with unlawful use of a weapon. 239 Or.App. at 192-93, 244 P.3d 382. In this case, we hold that the court did not commit error at all in failing to merge the two provisions.