Argued and submitted July 20, 2007, reversed and remanded April 2, petition for review denied June 18, 2008 (344 Or 671)

## STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

## FERNANDO G. RUIZ,
*Defendant-Respondent.*

Marion County Circuit Court
05C45322; A129934

182 P3d 246

Douglas F. Zier, Assistant Attorney General, argued the cause for appellant. With him on the briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Jason E. Thompson argued the cause for respondent. With him on the brief was Ferder Casebeer French & Thompson, LLP.

Before Edmonds, Presiding Judge, and Brewer, Chief Judge, and Sercombe, Judge.

SERCOMBE, J.

## SERCOMBE, J.

The state appeals an order granting defendant's motion to suppress evidence seized from a warrantless search of his automobile. The state contends that the seizure without a warrant was lawful under the state constitution because of the exigent circumstances of the automobile's mobility or, alternatively, because the search was incident to defendant's arrest. We agree that the search was reasonable under the state constitution because of exigent circumstances and reverse the order granting defendant's motion to suppress.

Trooper Madsen stopped defendant's vehicle because it was weaving for several miles in a southbound lane of traffic on Interstate 5. Madsen later testified that defendant appeared to be "very nervous," his speech was "slow and lethargic," he had "open sores on his arms and face" and "white foam" at the corners of his mouth, his eyes were "real droopy," and he appeared to be having a hard time staying awake. Based on those observations, Madsen concluded that defendant was under the influence of either alcohol or a narcotic. Madsen obtained defendant's identification and requested a warrant check. The dispatcher reported that defendant had an outstanding arrest warrant. Madsen removed defendant from the automobile and placed him under arrest based on the warrant. Two other state troopers arrived at the scene to assist.

After patting down defendant for weapons and giving *Miranda* warnings, Madsen asked defendant for permission to search his vehicle, and defendant refused. Defendant did, however, consent to the administration of field sobriety tests. Defendant's performance on those tests convinced Madsen that defendant was under the influence of narcotics. After defendant was placed in the back of Madsen's patrol car, one of the troopers noticed a baggie on the ground where defendant had taken the field sobriety tests. The baggie contained a white substance that field tested positive for methamphetamine. Madsen asked defendant if the baggie belonged to him, and defendant denied ownership. Madsen then questioned defendant about drug use, and defendant

responded that he was a "junkie" and that he had taken heroin just a few hours before being stopped by Madsen.

While defendant and Madsen were talking in the patrol car, a Salem police officer arrived with a police dog trained to detect drugs. After a canvass of the outside of the vehicle, the dog indicated the presence of drugs inside the rear passenger door. The police dog was deployed to investigate the inside of the automobile, and the dog directed attention to a black nylon toiletries bag lying on the floor behind the front passenger seat. The officer opened the toiletries bag and found a clear plastic bag that contained a brown substance that appeared to be tar heroin. Field testing confirmed that impression. A state trooper searched the center console between the front seats of the vehicle and found a Colt .45 automatic pistol and a Crown Royal bag that held $25,440 in cash.

Defendant was indicted for delivery of a Schedule I controlled substance (heroin), possession of a Schedule II controlled substance (methamphetamine), being a felon in possession of a firearm, and driving while under the influence of intoxicants. Before trial, defendant moved for the suppression of "all evidence, including derivative evidence, intended to be used against defendant at trial," because "the search and seizure of any and all evidence was unlawful pursuant to Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution."[1] His supporting memorandum of law cited authority that warrantless searches are unreasonable under the state and federal constitutions, unless conducted under a recognized exception to the requirement of a search warrant, and relied solely on *State v. Kruchek*, 156 Or App 617, 969 P2d 386 (1998), *aff'd by an equally divided court*, 331 Or 664, 20 P3d 180 (2001), to support his contention that the motion to suppress should be allowed. In that case, this court held that, once police impound a motor vehicle, any exigency created by

---

[1] Article I, section 9, of the Oregon Constitution provides, in part, that "[n]o law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure * * *." The Fourth Amendment to the United States Constitution provides, in part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated * * *."

the vehicle's mobility is extinguished under Article I, section 9, of the Oregon Constitution.

The state responded that the search was reasonable without a warrant under Article I, section 9, because the vehicle was not impounded before the search, and the exigent circumstances of mobility continue until its impoundment. Alternatively, the state argued that the search was proper as incident to defendant's arrest.

Madsen testified at the suppression hearing that, at the time of the search, the automobile was "under [his] control," that a tow would be ordered when the investigation was complete, but that he "wasn't at that time going to call a tow at all." The trial court commented at the suppression hearing:

> "I don't think this is an auto exception case because the police had possession of the car. In other words, the car was not going to drive off. They were going to impound it, so there wasn't any exigent circumstances requiring search."

Following further briefing, the trial court issued a letter opinion that stated:

> "The Court has read all the cases cited by both parties and it is this Court's opinion that *State v. Kruchek*, 156 Or App 617 (1998), and *State v. Resler*, 163 Or App 328 (1999), apply and the search shall be suppressed.
>
> "The attorney for the defendant shall prepare the order."

The resulting order granted the motion to suppress, without further elaboration, "for the reasons stated in the [d]efendant's motion to suppress."

We review the trial court's legal conclusion that the search was unreasonable under Article I, section 9, of the Oregon Constitution for errors of law appearing upon the record. ORS 138.220. A trial court's findings of historical fact are binding on review if there is supporting evidence in the record. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). If findings are not made, and there is "evidence from which such facts could be decided more than one way, we will presume that the facts were decided in a manner consistent with the court's ultimate conclusion." *Id.*

■   The parties renew on appeal their contentions below. However, defendant adds the argument that there is a separate basis to affirm in this case. He contends that the trial court ruling was based on *both* the state and federal constitutions and, because the state failed to advance arguments in its opening brief on the federal constitutional question, it waived its right to object to the order on federal constitutional grounds. Defendant relies on two cases for the proposition that, when a trial court makes a decision on multiple theories, an appellant must show on appeal that all theories were erroneous. *See Roop v. Parker Northwest Paving Co.,* 194 Or App 219, 236, 94 P3d 885 (2004), *rev den,* 338 Or 374 (2005) ("[W]here plaintiffs fail to challenge the alternative basis of the trial court's ruling, we must affirm it."); *State ex rel SOSCF v. Duncan,* 164 Or App 610, 993 P2d 818 (1999), *rev den,* 330 Or 361 (2000) (failure to challenge alternative grounds for termination of parental rights as determinative of appeal). Defendant also cites the concurring opinions in *State v. Stoudamire,* 198 Or App 399, 416, 108 P3d 615 (2005) (Armstrong, J., and Landau, J., respectively, concurring) (discussing failure of state to challenge federal constitutional justification for search by appeal of only state constitutional issue).

In *Roop, Duncan,* and *Stoudamire,* however, the trial courts explicitly decided the cases on alternative grounds that were not disputed on appeal. Here, the trial court ruling was based on "the reasons stated in the [d]efendant's motion to suppress." Defendant's supporting memorandum to the motion references the Fourth Amendment but does not contain any distinct analysis of that federal constitutional provision. The memorandum states only that *Kruchek* "dictates this case." The trial court's letter opinion also cites only *Kruchek* and *State v. Resler,* 163 Or App 328, 987 P2d 1269 (1999), *rev den,* 334 Or 190 (2002). *Kruchek* was decided on state constitutional grounds alone, and *Resler* relied on *Kruchek* as controlling its outcome. Defendant did not argue below that the Fourth Amendment provides greater protection against automobile searches than Article I, section 9. We therefore conclude that the trial court decided the motion based on Article I, section 9, and not on the Fourth Amendment. Therefore, there was no need for the

state to claim as error on appeal any application of the federal constitution.

Nor is this case an appropriate one to address any Fourth Amendment issue. On appeal, defendant does not argue that the search of the automobile might violate the Fourth Amendment if it satisfied the requirements of Article I, section 9. Because the parties did not make any distinct federal constitutional arguments in the proceedings below, and because defendant does not pursue that argument on appeal, we decline to consider the federal constitutional question. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659, 20 P3d 180 (2001) ("right for the wrong reason" principle permits reviewing court "as a matter of discretion" to affirm lower court on alternative basis if certain conditions are met). We do not imply that any such consideration would benefit defendant.

■ Turning to the validity of the search under Article I, section 9, the issue is whether any degree of control of an automobile by the police, short of impoundment, will suffice to eliminate the mobility exigency that excuses the need for a search warrant. The trial court in this case, relying on *Kruchek* and *Resler*, remarked that, because the police had "possession of the car," it was "not going to drive off," and the "police were going to impound it," the exigency had dissipated and a warrant was required. That reliance was misplaced.

The controlling law is stated in *State v. Brown*, 301 Or 268, 721 P2d 1357 (1986). The Supreme Court held in that case that a *"per se* exigency rule" exists for automobile searches under Article I, section 9. *Id.* at 277. In *Brown*, the court held that automobiles, by their very nature, are mobile so they may be searched and seized without a warrant if two circumstances exist: (1) the automobile is mobile at the time it is stopped by the police; and (2) if probable cause exists for the search.[2] *Id.* at 274. According to the court, that bright-line rule avoids the determination of exigencies on a "case-by-case basis" and affords to police "clear guidelines by which they

_____

[2] On appeal, defendant does not specifically challenge the existence of probable cause, so we do not address it.

can gauge and regulate their conduct rather than trying to follow a complex set of rules dependent upon particular facts regarding the time, location and manner of highway stops." *Id.* at 277.

We determined in *Kruchek* that an automobile ceases to be mobile when it is impounded and that a warrant is required for a search after impoundment. 156 Or App at 624 (stating that once the officer had "impounded" the defendant's van "any exigency created by the van's mobility was extinguished" because the officer was "in control of the vehicle and could have kept it at the location of the stop until a warrant was issued"). Defendant contends that *Kruchek* should be extended to situations where, as here, the police have possession and control of a vehicle, with intent to impound it, making the vehicle "constructively impounded." We rejected that argument in *State v. Getzelman*, 178 Or App 591, 39 P3d 195, *rev den*, 334 Or 289 (2002), and *State v. Forrister*, 179 Or App 516, 40 P3d 571 (2002).

In *Getzelman*, the defendant challenged the trial court's denial of his motion to suppress evidence obtained from a warrantless search of his backpack, found in a car in which he was a passenger. The trial court denied the motion on the ground that the search was authorized by the automobile exception to the warrant requirement of Article I, section 9. The defendant argued on appeal that the automobile exception did not apply because, at the time of the search, he had been arrested and the narcotics team had secured the car. According to the defendant, the police possession of the automobile was a "seizure" and the functional equivalent of impoundment, and, therefore, the automobile exception did not apply under the logic of *Kruchek*. *Getzelman*, 178 Or App at 598-99.

In rejecting that argument, we noted that, "[w]ith good reason, we did not hold in *Kruchek* that any police action short of actual impoundment or other confiscation of a stopped vehicle would extinguish its mobility. Such a conclusion would be squarely at odds with controlling case law." *Id.* at 599 (footnote omitted). Instead, we observed that "[t]he automobile exception does not focus on the mobility of a vehicle at the time it is searched but, rather, on its mobility at the

time it was stopped." *Id*. at 600; *see also State v. Kosta*, 304 Or 549, 555, 748 P2d 72 (1987) ("[I]t does not matter that defendant was physically unable to move the automobile after the stop: All the trial court was required to find * * * was that 'the car was mobile at the time it was stopped by the police.' ").

We held in *Getzelman* that an automobile ceases to be mobile *only* when it is impounded in accordance with established police procedures:

"In the end, *Kruchek* is reconcilable with *Brown* and *Kosta* based on the premise that a vehicle that was mobile when stopped is no longer merely *stopped* once impoundment has occurred in accordance with established police procedures. Viewed in that light, *Kruchek* does not offend the aim of clarity underlying the *per se* nature of the automobile exception. By contrast, the rule of *constructive* impoundment advocated by defendant would return police to the complex task of legal fact-matching under dynamic field conditions that the court in *Brown* sought to avoid. Further, defendant's theory cannot be reconciled with results in *Brown* and *Kosta* that were based on circumstances comparable to those found here. Unlike in *Kruchek*, there is no evidence that, when the search of defendant's backpack occurred, the car was impounded or that the investigating officers had arranged for it to be towed. Because the stop of [the] vehicle had not been converted to an impoundment, the mobility requirement of the automobile exception was satisfied."

178 Or App at 601 (emphasis in original).

Similarly, in *Forrister*, the defendant challenged the trial court's denial of a motion to suppress evidence obtained as a result of a warrantless search of his car. He argued that his car was no longer mobile when officers searched it because he was under arrest and the officers planned to tow his car. 179 Or App at 519. As in this case, the officer in *Forrister* testified that "[t]he vehicle was going to be towed." *Id*. We held that the fact that the officer was planning to tow the defendant's car at some future time did not mean that the car was impounded; the officer's statements merely stated "what [he] was planning to do, not what he had already done." *Id*. at 521. Accordingly, we found that the stop of the defendant's vehicle had not yet been converted to an

impoundment at the time it was searched and, therefore, the trial court did not err in denying the defendant's motion to suppress on the basis of the automobile exception to the warrant requirement. *Id.*

Based on *Getzelman* and *Forrister*, we hold that the search of defendant's vehicle was subject to the automobile exception to the warrant requirement in Article I, section 9. Defendant's vehicle was mobile at the time it was stopped. Defendant's vehicle was searched before the officers had arranged for or secured a tow, in accordance with established police procedures. For those reasons, the warrantless search of the vehicle did not violate defendant's rights under Article I, section 9. Therefore, the trial court erred in granting defendant's motion to suppress.

Because the search was justified under the automobile exception, we need not address the state's alternative argument that the search could also be justified as a search incident to defendant's arrest.

Reversed and remanded.