Submitted August 23, 2019; convictions for second-degree assault and unlawful use of a weapon reversed and remanded for entry of judgment of conviction for second-degree assault, remanded for resentencing, otherwise affirmed
February 12, 2020

# STATE OF OREGON,
## *Plaintiff-Respondent,*

*v.*

# PATRICK MICHAEL JOHN DREW,
## *Defendant-Appellant.*

Marion County Circuit Court
17CR27091; A166170

460 P3d 1032

Defendant appeals a judgment of conviction for one count of second-degree assault, ORS 163.175, and one count of unlawful use of a weapon, ORS 166.220. In his first assignment of error, defendant contends that the trial court plainly erred by failing to merge the two guilty verdicts into a single conviction for second-degree assault. In his second assignment of error, defendant, who was sentenced to 70 months' incarceration for second-degree assault pursuant to ORS 137.700, contends the trial court erred in determining that the victim of the assault suffered a "significant physical injury" under ORS 137.712(2)(b)(A), thereby making defendant ineligible for a lesser sentence under ORS 137.712(1). *Held*: The trial court plainly erred in failing to merge the two guilty verdicts into a single conviction for second-degree assault, and the Court of Appeals exercised its discretion to correct the error. The trial court did not err when it denied defendant eligibility for a downward departure sentence because the victim suffered a "significant physical injury" from the assault.

Convictions for second-degree assault and unlawful use of a weapon reversed and remanded for entry of judgment of conviction for second-degree assault; remanded for resentencing; otherwise affirmed.

Mary Mertens James, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Kristin A. Carveth, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Joanna Hershey, Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

TOOKEY, J.

Convictions for second-degree assault and unlawful use of a weapon reversed and remanded for entry of judgment of conviction for second-degree assault; remanded for resentencing; otherwise affirmed.

Aoyagi, J., concurring in part, dissenting in part.

**TOOKEY, J.**

Defendant appeals a judgment of conviction for one count of second-degree assault, ORS 163.175, and one count of unlawful use of a weapon, ORS 166.220. In his first assignment of error, defendant contends that the trial court plainly erred by failing to merge the two guilty verdicts into a single conviction for assault in the second degree. The state concedes that the trial court plainly erred. As explained further below, we agree, accept that concession, and exercise our discretion to correct the error. Accordingly, we reverse and remand for resentencing.

In his second assignment of error, defendant, who was sentenced to 70 months' incarceration for second-degree assault pursuant to ORS 137.700(2)(a)(G), contends the trial court erred in determining that the victim of the assault suffered a "significant physical injury" under ORS 137.712 (2)(b)(B), making defendant ineligible for a lesser sentence under ORS 137.712(1).[1] For the reasons expressed below, we conclude that the victim suffered a significant physical injury under ORS 137.712(2)(b)(B) as a result of the assault.[2] Therefore, the trial court did not err when it imposed the 70-month "mandatory minimum" sentence under ORS 137.700(2)(a)(G).

## I.   STANDARD OF REVIEW

"We review a claim that the sentencing court failed to comply with the requirements of law in imposing a sentence for errors of law." *State v. Kinsey*, 293 Or App 208, 209, 426 P3d 674 (2018) (internal quotation marks omitted). "We

---

[1] Although we are remanding for resentencing on defendant's first assignment of error, we address defendant's second assignment of error because it is likely to arise on remand. *See, e.g.*, *State v. Warren*, 291 Or App 496, 505 n 7, 422 P3d 282, *rev den*, 363 Or 744 (2018) (addressing aspects of assignments of error that are likely to arise on remand despite reversing on different ground). Furthermore, all citations to ORS 137.700 and ORS 137.712 are to the 2017 version of those statutes, the version that was in effect when defendant was sentenced.

[2] Defendant also filed a supplemental brief that assigned error to the trial court's instruction to the jury that it could return a nonunanimous verdict. Defendant contends that the Sixth and Fourteenth Amendments to the United States Constitution require unanimous jury verdicts. We reject that argument, on the merits, without further discussion.

state the facts in the light most favorable to the state." *Id.* (internal quotation marks omitted).

## II.  BACKGROUND

Defendant, defendant's intimate partner, and the victim lived together in a house in Woodburn, Oregon. The victim and defendant's intimate partner were involved in a physical altercation, following which the victim went to her bedroom, shut the door, and locked it. Defendant then "kicked in" the victim's door and entered the victim's room, wielding what looked to the victim like a "broken mop stick" or a broken broom stick, although it may have been a metal pipe. Defendant, who, according to the victim, was holding the stick "like *** a major league batter," then raised the stick above his head and, while holding it with two hands, brought it down directly onto the victim's head. After striking the victim, defendant screamed, "Get the fuck out."

The force of the blow almost knocked the victim to the ground and dazed her. It also opened up a wound on the victim's head that was four to six inches in length, running from the front of the victim's forehead onto her scalp. When defendant struck the victim, she felt "something coming down her face," noticed that "her hands were full of blood," and then she started "choking on" the blood because "[i]t was running down into [her] mouth." The victim also testified that the wound hurt "really bad" and was "throbbing."

The victim climbed out of the bedroom window and ran. Once outside, the victim was unable to control the bleeding. A witness at defendant's trial, who saw the victim outside of the victim's house, described seeing "blood all over [the victim's] face" and "everywhere" else, meaning "all over the [victim's] room and out towards the window and *** where we were at."

Subsequently, police officers and an ambulance arrived on the scene. One officer took a picture of the victim's injury, and described the wound caused by the blow as "pretty big" and as "bleeding all over [the victim's] face." He also noted that "blood had dripped in the house itself."

Emergency medical technicians were ultimately able to control the bleeding and the victim was taken to the hospital. At the hospital the victim's wound was cleaned and it required five staples to close. Even after being closed with staples, the wound was four to six inches long and approximately one-half inch wide. The staples were removed "almost two weeks later."

Defendant was indicted for, among other offenses, second-degree assault and unlawful use of a weapon. The second-degree assault charge alleged that defendant "unlawfully and knowingly cause[d] physical injury to [the victim] by means of a dangerous weapon, to wit: a hard object." The unlawful use of a weapon charge alleged that defendant "did unlawfully attempt to use unlawfully against [the victim], a hard object, a dangerous weapon."

After a trial, a jury found defendant guilty of one count of second-degree assault and one count of unlawful use of a weapon.

A conviction for second-degree assault requires a "mandatory minimum" sentence of 70 months' imprisonment pursuant to ORS 137.700(2)(a)(G), unless a defendant is eligible for a downward departure sentence under ORS 137.712(1). At his sentencing hearing, defendant argued that, although a conviction of second-degree assault generally requires a minimum sentence of 70 months' imprisonment pursuant to ORS 137.700(2)(a)(G), he was eligible for a downward departure sentence under ORS 137.712. That statute provides, in pertinent part:

"(1)(a) Notwithstanding ORS 137.700 ***, when a person is convicted of *** assault in the second degree as defined in ORS 163.175(1)(b), *** the court may impose a sentence according to the rules of the Oregon Criminal Justice Commission that is less than the minimum sentence that otherwise may be required by ORS 137.700 *** if the court, on the record at sentencing, makes the findings set forth in subsection (2) of this section and finds that a substantial and compelling reason under the rules of the Oregon Criminal Justice Commission justifies the lesser sentence. ***

"* * * * *

"(2)   A conviction is subject to subsection (1) of this section only if the sentencing court finds on the record by a preponderance of the evidence:

"* * * * *

"(b)   If the conviction is for assault in the second degree:

"(A)   That the victim was not physically injured by means of a deadly weapon;

"(B)   That the victim did not suffer a significant physical injury; and

"(C)   That the defendant does not have a previous conviction for a crime listed in subsection (4) of this section."

ORS 137.712.

For its part, the state did not argue that the victim was physically injured by means of a deadly weapon, ORS 137.712(2)(b)(A), or that defendant had prior convictions that would disqualify him from a downward departure sentence, ORS 137.712(2)(b)(C). Thus, the only issue at the sentencing hearing with respect to defendant's eligibility for a downward departure sentence under ORS 137.712(1)—apart from whether a substantial and compelling reason under the rules of the Oregon Criminal Justice Commission justified a downward departure—was whether defendant was ineligible for a downward departure because the victim suffered a "significant physical injury," ORS 137.712(2)(b)(B). A "significant physical injury" is defined in ORS 137.712 (6)(c) as an injury that:

"(A)   Creates a risk of death that is not a remote risk;

"(B)   Causes a serious and temporary disfigurement;

"(C)   Causes a protracted disfigurement; or

"(D)   Causes a prolonged impairment of health or the function of any bodily organ."

Specifically, the state argued that defendant was ineligible for a downward departure under ORS 137.712, because, under ORS 137.712(6)(c)(A), "the victim being hit over the head full force with two arms swinging directly down with the weapon * * * created a risk of death that was not a remote risk," and because, under ORS 137.712(6)(c)(B), "the blow to

the head \*\*\* caused a serious and temporary disfigurement for the splitting open of the scalp to \*\*\* the skull and the stitches that followed."

In response, defendant argued that, although every blow to the head "creates some concerns," it did not cause a risk of death that was not a remote risk, because there was no evidence to show that "the victim \*\*\* had received a concussion or that she lost consciousness." In addition, defendant argued that the victim's injury did not cause a serious and temporary disfigurement, because there was no evidence of "what [the victim's] condition was at the time of trial; or indeed, even a week after this injury occurred" so it "might have been that this cut healed very rapidly on its own. \*\*\* What we know is that she received a cut that required five staples \*\*\* and that, \*\*\* when she was in court, she no longer had the staples in her forehead."

The trial court determined that there "was a significant injury and that there was a risk of death" that was not a remote risk. The trial court reasoned:

> "The force that was described to \*\*\* hit the victim on the head, right on the head where the brain is, was significant. It is fortunate that there was no permanent brain injury, but it certainly was—the potential was certainly there. The risk was there.
>
> "I \*\*\* am concerned about a lack of remorse as well, but \*\*\* before I can even look at that, I would have to look at whether this was a case involving significant injury with a weapon."

The trial court continued its significant physical injury analysis, rejecting defendant's argument that the victim's injuries did not result in a "serious and temporary disfigurement" because there was no evidence of "what [the victim's] condition was \*\*\* even a week after this injury" so it "might have been that this cut healed very rapidly on its own." The trial court reasoned that

> "the fact that the victim received, I believe, four or six staples in her head is also evidence that this was not just a gash that would heal up quickly. It was something that required a surgical intervention for it to—to be repaired."

Accordingly, the trial court sentenced defendant to the "mandatory minimum" 70 months' incarceration for the second-degree assault conviction pursuant to ORS 137.700(2)(a)(G). The trial court also imposed a concurrent 12-month sentence for defendant's unlawful use of a weapon conviction.[3]

### III.   ANALYSIS

A.  *Merger*

As noted above, on appeal, defendant contends that the trial court plainly erred in failing to merge the two guilty verdicts into a single conviction for assault in the second degree. The state concedes that the trial court should have merged the guilty verdicts into a single conviction for second-degree assault. We agree with and accept the state's concession. *See State v. Ryder*, 230 Or App 432, 434-35, 216 P3d 895 (2009) (accepting the state's concession that the trial court plainly erred in entering two separate convictions for second-degree assault and unlawful use of a weapon, where "[b]oth of those charges arose out of defendant's concurrent conduct against the same victim—that is, defendant unlawfully used a knife, a dangerous weapon, against that victim and, by doing so, did intentionally and knowingly cause her physical injury"); *cf. State v. Alvarez*, 240 Or App 167, 171-74, 246 P3d 26 (2010), *rev den*, 350 Or 408 (2011) (holding that first- and second-degree assault and unlawful use of a weapon charges did not merge where the unlawful use counts alleged that the defendant had committed the crimes by carrying or possessing a dangerous weapon with the intent to use it unlawfully). Further, for the reasons expressed in *Ryder*, we exercise our discretion to correct the error. 230 Or App at 435.

B.  *Significant Physical Injury*

On appeal, defendant contends that the trial court erred in determining that the victim of the assault suffered a "significant physical injury" under ORS 137.712(2)(b)(B) because, in defendant's view, the evidence did not support

---

[3] At the sentencing hearing, defendant did not argue that the guilty verdicts for second-degree assault and unlawful use of a weapon should merge into a single conviction for second-degree assault.

the trial court's determination that the victim suffered an injury that created "a risk of death that is not a remote risk," ORS 137.712(6)(c)(A).[4] As noted, defendant also contends that he met his burden to prove that the injury did not cause "a serious and temporary disfigurement," so we may not affirm on that basis. ORS 137.712(6)(c)(B). The state, for its part, contends that "[d]efendant did not meet the eligibility criteria for a downward departure sentence under ORS 137.712." For the reasons that follow, we conclude that the victim suffered "a serious and temporary disfigurement." ORS 137.712(6)(c)(B).[5]

---

[4] As defendant notes in his opening brief, "[t]he trial court appeared to rely on (A)" based on its finding "that there was a significant injury and that there was a risk of death." In defendant's preservation section, however, defendant states only that the "trial court ruled that defendant was not eligible for an opt-out of Measure 11 due to the victim's injury," but he does not point to any particular subsection of ORS 137.712(6)(c) as the basis for the trial court's ruling that the victim's injury was significant. Presumably, that is why defendant also argues that, "[a]lthough the trial court appeared to rely only on the risk of death factor, *** no other factors support a conclusion that the victim suffered a significant physical injury"—including whether the injury caused "a serious and temporary disfigurement" under ORS 137.712(6)(c)(B). *Cf. State v. Ruiz*, 219 Or App 148, 153, 182 P3d 246, *rev den*, 344 Or 671 (2008) (where appellants "fail to challenge the alternative basis of the trial court's ruling, we must affirm it" (internal quotation marks omitted)).

[5] As noted above, we infer from the parties' arguments and the trial court's ruling that it rejected defendant's argument that the victim did not suffer a serious and temporary disfigurement, because, although "she initially did have something that required staples," the victim's wound could have "healed very rapidly on its own." The state, as the respondent on appeal, does not renew its contention that the victim suffered a serious and temporary disfigurement in support of the trial court's ruling denying defendant eligibility for a downward departure sentence. But that failure does not prevent us from addressing defendant's argument on appeal that the victim did not suffer a serious and temporary disfigurement, because, on this record, we can infer from the context of the trial court's ruling that it relied on the state's contention that the victim's wound was "a serious and temporary disfigurement for the splitting open of the scalp to *** the skull and the [staples] that followed." As discussed above, the trial court ruled that the "fact that victim received *** four or six staples in her head" was "evidence that this was not just a gash that would heal up quickly." *See State v. Nix*, 236 Or App 32, 42-43, 43 n 7, 237 P3d 842 (2010), *rev dismissed as improvidently allowed*, 350 Or 298 (2011) (observing that, "[a]lthough defendant, as respondent, d[id] not renew [a] *** contention in support of the trial court's ruling, that failure d[id] not preclude us from, as a prudential matter, considering and addressing the correctness of a contention raised to the trial court" where "the trial court has not expressly expressed its reasoning," but "it is likely, in the totality of the circumstances, that the trial court's ruling was based on a specific contention raised and developed by the prevailing party"); *State v. Williams*, 161 Or App 111, 116, 984 P2d 312 (1999) ("In construing a statute, this court is responsible for identifying the correct interpretation, whether or not asserted by the parties." (Internal quotation marks omitted.)).

We have not yet interpreted the phrase "serious and temporary disfigurement" as used in ORS 137.712 (6)(c)(B). What constitutes "a serious and temporary disfigurement" under ORS 137.712(6)(c)(B) is a question of statutory interpretation. "A trial court's interpretation of a statute is reviewed for legal error." *State v. Thompson*, 328 Or 248, 256, 971 P2d 879, *cert den*, 527 US 1042 (1999). When we interpret a statute, "[w]e ascertain the legislature's intentions by examining the text of the statute in its context, along with any relevant legislative history, and, if necessary, canons of construction." *State v. Cloutier*, 351 Or 68, 75, 261 P3d 1234 (2011) (citing *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009)).

We start with the statutory text because it is "the best evidence of the legislature's intent." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). As noted, a defendant is eligible for a downward departure from the mandatory minimum 70-month sentence for second-degree assault under ORS 137.700 (2)(a)(G) if the defendant proves by a preponderance of the evidence that the victim did not suffer a "significant physical injury" under ORS 137.712(2)(b)(B). A "significant physical injury" is defined in ORS 137.712(6)(c)(B) as an injury that, among other things, "[c]auses a serious and temporary disfigurement." A "serious and temporary disfigurement" is not statutorily defined so we may look to dictionary definitions to ascertain the plain meaning of that phrase. *See Gaines*, 346 Or at 175 (using dictionary definitions to discern the plain, natural, and ordinary meaning of terms). However, in this case, we briefly pause to review the text in context and the legislative history, because an understanding of the text in context and the legislative history provides a useful backdrop to ascertain the legislature's intended meaning of the phrase, "serious and temporary disfigurement." *See State v. Gonzalez-Valenzuela*, 358 Or 451, 461-64, 365 P3d 116 (2015) (discussing the "limitations" of consulting dictionaries "in a vacuum," and noting that "context may also reveal that the dictionary contains no definitions clarifying the issue in dispute" (internal quotation marks omitted)). That is so because, as explained below, the legislature intended for us to rely on the statutory definitions of "physical injury" and

"serious physical injury," and our case law applying those phrases, to determine what qualifies as a "significant physical injury."

        In January 1997, House Bill (HB) 2233 (1997) was introduced to provide certain exceptions to the mandatory minimum sentences under ORS 137.700. Then, approximately six months later, the House Judiciary Committee held a public hearing on HB 2233 to consider the proposed "dash 14 amendments." House Committee on Judiciary, HB 2233, June 12, 1997. At that hearing, Mark Gardner, Special Counsel to Attorney General Hardy Myers, testified in support of the "dash 14 amendments" to HB 2233. Tape Recording, House Committee on Judiciary, HB 2233, June 12, 1997, Tape 55, Side B (statements of Mark Gardner). Gardner explained that the proposed "dash 14 amendments" were the product of a work group convened by the Department of Justice that included representatives from the Oregon District Attorneys Association, the Citizens Crime Commission, Crime Victims United, and the Oregon Criminal Defense Lawyers Association, and that the amendments represented a "finely crafted compromise." Exhibit K, House Committee on Judiciary, HB 2233, June 12, 1997 (accompanying testimony of Mark Gardner). *See Kohring v. Ballard*, 355 Or 297, 311-12, 325 P3d 717 (2014) (it "is appropriate to give greater weight" to statements of nonlegislators "when the nonlegislators were the drafters and principal proponents of a bill, and it is clear that the legislature relied on their explanations").

        Also testifying in support of the "dash 14 amendments" was Francis Baker, of the Citizens Crime Commission, who was also a part of the work group that worked on adding the phrase "significant physical injury," as it had yet to be defined in the criminal code. Tape Recording, House Committee on Judiciary, HB 2233, June 12, 1997, Tape 55, Side B (statements of Francis Baker). Baker testified that the phrase "significant physical injury" was "carefully drafted" by looking to the existing definitions of "physical injury" and "serious physical injury" under ORS 161.015, and the case law interpreting those phrases, to determine what qualifies as a "significant physical injury." *Id*. Baker

explained that the phrase "significant physical injury" was intended to "fill[ ] in" the "wide gap" between the categories of what constitutes a "physical injury" and a "serious physical injury." *Id*.

For example, Baker presented a hypothetical in which she discussed how a 16-year-old boy would be eligible for a downward departure if he were to throw a phone at his sister "causing a bruise and a cut on her cheek bone" because the "injury was not significant." *Id*.; Exhibit M, House Committee on Judiciary, HB 2233, June 12, 1997 (accompanying testimony of Francis Baker). As an example of a situation in which a defendant would be ineligible for a downward departure, Baker pointed to *State v. Moyer*, 37 Or App 477, 480-81, 587 P2d 1054 (1978), a case in which we concluded that the trial court erred in finding that the victim's scars that were caused by a stab wound to the chest constituted a "serious and protracted disfigurement," because "the two scars, located as they are in an area normally covered by clothing, do not constitute the sort of injury contemplated in ORS 161.015[.]" Exhibit M, House Committee on Judiciary, HB 2233, June 12, 1997 (accompanying testimony of Francis Baker). According to Baker, the injury suffered by the victim in *Moyer* seemed to the workgroup like more than a "physical injury," but she noted that the Court of Appeals had no other option but to conclude that it was merely a physical injury, because there was no class of injury that fell between a "physical injury" and a "serious physical injury." Tape Recording, House Committee on Judiciary, HB 2233, June 12, 1997, Tape 55, Side B (statements of Francis Baker).

At a work session that same day, the House Committee on Judiciary voted to adopt the "dash 14 amendments" to HB 2233 and inserted the amended text of HB 2233 into another bill, Senate Bill (SB) 1049 (1997), in a practice colloquially known as "gutting and stuffing." Tape Recording, House Committee on Judiciary, HB 2233, June 12, 1997, Tape 56, Side B (statements of Rep John Minnis). The Senate concurred in the House amendments to SB 1049 and Governor Kitzhaber signed the bill into law. Thus, that preceding legislative history reveals that the

legislature intended for us to rely on our case law applying the phrases "physical injury" and "serious physical injury" to interpret the phrase "significant physical injury."

With that legislative history in mind, we begin with the definitions of "physical injury" and "serious physical injury" under ORS 161.015 as context for interpreting the phrase "significant physical injury" under ORS 137.712, which includes an injury that causes a "serious and temporary disfigurement." *See State v. Klein*, 352 Or 302, 309, 283 P3d 350 (2012) (a statute's context includes "related statutes and case law"); *Cloutier*, 351 Or at 99 ("[I]n the absence of evidence to the contrary, we ordinarily assume that the legislature uses terms in related statutes consistently.").

As used in the statutes defining phrases that apply to the various degrees of assault, ORS 161.015(7) defines "physical injury" to mean the "impairment of physical condition or substantial pain," and does not refer to injuries that result in disfigurement. ORS 161.015(8) defines "serious physical injury," in relevant part, as a "physical injury *** which causes serious and protracted disfigurement." As such, we look to our cases applying the phrases "physical injury" and "serious physical injury" as context for interpreting the phrase "serious and temporary disfigurement" in our endeavor to fill in the gap between what constitutes a "physical injury" and what constitutes a "serious physical injury." *See State v. McAnulty*, 356 Or 432, 441, 338 P3d 653 (2014) (in examining the text in context, "[w]e also consider this court's prior construction of the statutes at issue").

We begin by discussing *Moyer* in a little more detail, because it was the most relevant case cited in the legislative history that applied the phrase "serious and protracted disfigurement" to determine whether an injury was a serious physical injury. In *Moyer*, the victim was stabbed once in the chest, resulting in a scar one to one and one-quarter inches long and one-eighth of an inch wide just to the left of the victim's sternum. 37 Or App at 479. Additionally, the stabbing resulted in a second scar from exploratory surgery which "beg[an] four inches below the neck and extend[ed] downward for six to seven inches." *Id*. We concluded that the trial court erred when it found that those injuries constituted a

"serious and protracted disfigurement." *Id*. at 479-81. We noted that there was no evidence of "how noticeable the scars would remain over time" and that the scars were "located * * * in an area normally covered by clothing," and, thus, did "not constitute the sort of [serious physical] injury contemplated in ORS 161.015." *Id*. at 480-81. Because a "serious physical injury" was a prerequisite to a finding that defendant had committed first-degree assault, we directed that the judgment should be modified to reflect a conviction for the lesser included crime of second-degree assault. *Id*. at 481.

In *Alvarez*, 240 Or App at 170-71, we concluded that a scar on the scalp, visible five months after an assault, constituted a "serious and protracted disfigurement" under ORS 161.015(8), and, thus, constituted a "serious physical injury," ORS 163.185(1)(a). In *Alvarez*, we affirmed the trial court's denial of a motion for judgment of acquittal on a first-degree assault charge where the assault had caused a wound to the victim that "had to be closed with four surgical staples, and left a scar [on the victim's scalp] that was visible to the jury five months after the attack." *Id*. at 169. The defendant in *Alvarez* argued that the injuries to the victim were "not serious enough to amount to 'serious physical injury' under ORS 163.185(1)(a)," which, as noted above, is defined in ORS 161.015(8) to mean a "physical injury which," among other things, "causes serious and protracted disfigurement." *Id*. at 169-70. We rejected the defendant's argument, holding that "a scar on the scalp, visible five months after the injury, qualifies as a '[serious and] protracted disfigurement,' ORS 161.015(8), and therefore as a 'serious physical injury,' ORS 163.185(1)(a)." *Id*. at 171. We also declined to hold that a scar was not a disfigurement merely because the victim of an assault could conceal the scar by wearing his or her hair in a particular manner. *Id*.

Following *Alvarez*, we decided *Kinsey*. In *Kinsey*, we affirmed the trial court's determination that the defendant was ineligible for a downward departure sentence under ORS 137.712 for a second-degree assault conviction, because the evidence was legally sufficient to support a determination that the victim suffered a "protracted disfigurement,"

ORS 137.712(6)(c)(C), and, therefore, a "significant physical injury," ORS 137.712(2)(b)(B). 293 Or App at 214-15. The defendant in *Kinsey* pistol-whipped the victim three times in the head, which resulted in "a '2 inch full-thickness laceration on the left side of [the victim's] head'" that required five staples to close. 293 Or App at 209. The staples were removed eight days later, and defendant's head was swollen and misshapen. *Id*. That wound left a scar on the victim's head that was visible more than six months after the assault occurred. *Id*. at 214. Guided by our holding in *Alvarez*, we first concluded that "[a] scar on the scalp, resulting from a blow to the head that is severe enough to cause one's head to be 'really swollen, and misshapen,' and that inflicts a '2 inch full-thickness laceration' that has to be closed with five staples, qualifies as a 'disfigurement' under ORS 137.712 (6)(c)(C)." *Id*. at 213-14. We also concluded, "in accordance with our holding in *Alvarez*," that the victim's "disfigurement was 'protracted,' as that term is used in ORS 137.712 (6)(c)(C)," because the "victim's scar was visible more than six months after the assault occurred." *Id*. at 214.

With that background in mind, we turn back to the question whether the injury that the victim suffered in this case is the type of injury that the legislature intended to qualify as a "serious and temporary disfigurement." ORS 137.712(6)(c)(B).

A "disfigurement" is defined as "the act of disfiguring or the state of being disfigured." *Webster's Third New Int'l Dictionary* 649 (unabridged ed 2002). "Disfigure" is defined as "to make less complete, perfect, or beautiful in appearance or character : DEFACE, DEFORM, MAR." *Id*.[6] We conclude that the wound on the victim's forehead and scalp

---

[6] As stated in the Proposed Oregon Criminal Code Final Draft and Report, 4, Commentary, Art 1, § 3 (1970), the definitions of "'physical injury' and *** 'serious physical injury' are taken from the New York statute and have particular importance in the assault and robbery areas." As the New York Court of Appeals explained, "a person is disfigured when [their] natural beauty, symmetry or appearance is detrimentally altered—*i.e.*, when [a person] is rendered less attractive." *People v. McKinnon*, 15 NY3d 311, 315, 937 NE2d 524 (2010). "A person is 'seriously' disfigured when a reasonable observer would find [the person's] altered appearance distressing or objectionable" and the nature of "the injury must be viewed in context, considering its location on the body and any relevant aspects of the victim's overall appearance." *Id*.

that was four to six inches in length and half an inch wide *after* five staples had been used to close it is a "disfigurement" as that term is ordinarily understood. *See Kinsey*, 293 Or App at 213 (concluding that a "scar on the scalp, resulting from a blow to the head that is severe enough to cause one's head to be 'really swollen, and misshapen,' and that inflicts a "2 inch full-thickness laceration" that has to be closed with five staples, qualifie[d] as a 'disfigurement'"). The victim's wound was readily visible and detrimentally marred her appearance.

Moreover, the evidence introduced about the type, size, visibility, and location of the wound, specifically the photograph of the wound with five staples in it following the assault, is legally sufficient to support a conclusion that the disfigurement was "serious." *Compare Moyer*, 37 Or App at 480-81 (concluding that a scar one to one and one-quarter inches long and one-eighth of an inch wide "located \*\*\* in an area normally covered by clothing" did not constitute a "serious and protracted disfigurement" under ORS 161.015), *with State v. Kuperus*, 241 Or App 605, 612-13, 251 P3d 235 (2011) (concluding that a "visible scar approximately four and one-half to five centimeters long where the portion of the ear [wa]s missing" was a "serious and protracted disfigurement and, thus, a serious physical injury"); *Alvarez*, 240 Or App at 170-71 (concluding that a wound that required four staples to close on the victim's scalp and the resulting scar which was visible five months after the injury qualified as a "serious and protracted disfigurement" under ORS 161.015(8)); *State v. Nguyen*, 222 Or App 55, 66-67, 191 P3d 767 (2008), *rev den*, 345 Or 690 (2009) (concluding that "'prominent' scarring above the victim's right ear approximately three inches long and about a half-inch wide where the hair does not grow back" constituted a "serious and protracted disfigurement"); and *Lambert v. Palmateer*, 187 Or App 528, 537-38, 69 P3d 725, *rev den*, 336 Or 125 (2003) (concluding that "a two-inch-long, half-inch-wide divot [in the victim's] left forehead \*\*\* visible from 40 feet away" constituted a "serious and protracted disfigurement and, thus, serious physical injury within the meaning of ORS 161.015" (internal quotation marks omitted)).

As discussed, the wound in this case was large, highly visible, and on the victim's face and scalp. A wound to the face and scalp that is four to six inches in length and half an inch wide, with five staples in it, and that is readily apparent to others, is the type of disfigurement that the legislature intended to qualify as "serious" under ORS 137.712(6)(c)(B).[7] In other words, the severity of the victim's disfigurement is such that "a reasonable observer would find [the victim's] altered appearance distressing or objectionable," particularly in light of its prominent location on the victim's face and scalp, and the pictoral evidence offered by the state in this case. *McKinnon*, 15 NY3d at 315. *See* Exhibit M, House Committee on Judiciary, HB 2233, June 12, 1997 (accompanying testimony of Francis Baker) (discussing how a simple bruise and cut on victim's cheek caused by her brother throwing a phone would not qualify as a significant physical injury). Hence, we conclude that the victim suffered a "serious disfigurement" as a result of the assault.

To the extent that defendant renews his argument that there was no evidence of "what [the victim's] condition was *** even a week after this injury occurred" so it "might have been that this cut healed very rapidly on its own," the evidence that the staples were not removed for approximately two weeks belies that assertion. Based on the evidence of the severity of the victim's wound to her face and the evidence that the staples were not removed for approximately two weeks, we conclude that the victim's injury constituted a "serious and temporary disfigurement." ORS 137.712(6)(c)(B).

IV.   CONCLUSION

In sum, the injury that defendant inflicted upon the victim falls within the "wide gap" that the legislature intended to "fill[] in" between what constitutes a "physical injury" and a "serious physical injury." Tape Recording,

---

[7] The photograph of the victim's wound was admitted as state's Exhibit 11. *See* Appendix; *Lambert*, 187 Or App at 537 (noting the absence of "pictorial evidence" of the victim's injury "to evaluate the severity of the disfigurement"); *id*. at 539-42 (discussing the importance of photographic evidence and medical records to "adequately convey[] the nature of the scar for purposes of appellate review" (Armstrong, J., concurring in part, dissenting in part)).

House Committee on Judiciary, HB 2233, June 12, 1997, Tape 55, Side B (statements of Francis Baker). Moreover, we conclude that the victim's injury in this case constituted a "serious and temporary disfigurement" under ORS 137.712(6)(c)(B). Because the victim suffered a "significant physical injury" from the assault, the trial court did not err when it determined that defendant was ineligible for a downward departure sentence under ORS 137.712. However, in light of our conclusion that the trial court plainly erred in failing to merge the two guilty verdicts into a single conviction for assault in the second degree, we reverse and remand for resentencing.

Convictions for second-degree assault and unlawful use of a weapon reversed and remanded for entry of judgment of conviction for second-degree assault; remanded for resentencing; otherwise affirmed.

APPENDIX



**AOYAGI, J.,** concurring in part and dissenting in part.

I agree with the majority as to defendant's first assignment of error—the conceded merger error—but disagree as to the second assignment of error. Specifically, I disagree that the trial court ruled on the "serious and temporary disfigurement" issue. Because the trial court did not actually rule on that issue, and because the state has not argued that issue on appeal, it is procedurally improper for us to affirm the "significant physical injury" ruling on that basis. I therefore would reverse and remand for further proceedings on *both* the first and second assignments of error.[1]

Several related principles govern when we will affirm a trial court ruling on a different basis than the parties argued to the trial court or are arguing on appeal. The perhaps best-known of those principles apply when the trial court did not decide an issue and the respondent asks us to decide it for the first time on appeal as an alternative basis to affirm a challenged ruling.[2] Those situations are sometimes referred to as the trial court being "right for the wrong reason." But there are also circumstances in which we will affirm a ruling on a basis that the trial court *decided* but which the respondent is not defending on appeal—that is, when the trial court was "right for the right reason." In particular, if the trial court clearly decided an issue on a basis that the respondent does not defend but which we determine was correct, we will affirm on that basis, notwithstanding the respondent's lack of defense. *See Cervantes v. Dept. of Human Services*, 295 Or App 691, 693, 435 P3d 831 (2019) (stating that we are not bound to accept a respondent's concession on a legal issue and must decide whether to do so); *State v. Nix*, 236 Or App 32, 42-45, 43 n 7, 237 P3d 842 (2010), *rev dismissed as improvidently allowed*, 350 Or 298

---

[1] I agree with the majority on the supplemental assignment of error, regarding the nonunanimous verdict jury instruction.

[2] *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (regarding alternative bases to affirm that were not argued in the trial court); *State v. Lovaina-Burmudez*, 257 Or App 1, 14, 303 P3d 988, *rev den*, 354 Or 148 (2013) (regarding alternative bases to affirm that were argued in the trial court but not decided in the trial court).

(2011) (considering, albeit ultimately rejecting, a basis on which the trial court actually ruled, even though the respondent did not defend it on appeal).

In this case, in the trial court, the state made two alternative arguments as to how the victim had suffered a "significant physical injury" under ORS 137.712(2)(b)(B). One was that the victim's injury (a gash to her head) had "create[d] a risk of death that [wa]s not a remote risk," ORS 137.712(6)(c)(A), and the other was that the victim's injury had "cause[d] a serious and temporary disfigurement," ORS 137.712(6)(c)(B). In response, defendant addressed the first issue at some length and the second issue more briefly. On the second issue, defendant argued that it was unknown how long it had taken the victim's cut to heal or what her condition had been "at the time of trial" or "even a week after this injury occurred." Defendant noted that the cut might have "healed very rapidly on its own and we simply don't have that information." All that was known, defendant asserted, was that the injury required staples and that "apparently, when she was in court, she no longer had the staples."

At the end of the hearing, the trial court sentenced defendant, including ruling that defendant was not legally eligible for a lesser sentence under ORS 137.712(1) because the victim had suffered a "significant physical injury." The court explained the basis for its "significant physical injury" ruling as follows:

> "And I don't find that the defendant qualifies to be taken out of Measure 11 on this case. *I find that there was a significant injury and that there was a risk of death.* The force that was described to hit the victim on the head, right on the head where the brain is, was significant. It is fortunate that there was no permanent brain injury, but it certainly was—the potential was certainly there. The risk was there. I am concerned about a lack of remorse as well, but I don't—I think that the State is right that before I can even look at that, I would have to look at whether this was a case involving significant injury with a weapon. *And the fact that the victim received, I believe, four or six staples in her head is also evidence that this was not just a gash that would heal up quickly. It was*

> *something that required a surgical intervention for it to be repaired.*"[3]

(Emphases added and duplicate words omitted.)

On appeal of the resulting judgment, in his opening brief, defendant states his understanding that the trial court based its "significant physical injury" ruling on a determination that the victim's injury created a nonremote risk of death under ORS 137.712(6)(c)(A). In an excess of caution, however, defendant also briefly addresses each alternative means of establishing a "significant physical injury," including serious and temporary disfigurement under ORS 137.712(6)(c)(B).[4] To quote the opening brief, "Although the trial court appeared to rely only on the risk of death factor, defendant notes that no other factors support a conclusion that the victim suffered a significant physical injury." In response, the state implicitly agrees that the trial court ruled only on the "risk of death" basis. The state does not contest defendant's characterization of the court's ruling, and its own argument is limited to the "risk of death" issue.

I agree with the parties that the trial court based its "significant physical injury" ruling on the "risk of death" factor in ORS 137.712(6)(c)(A) and did not reach the state's alternative argument about "serious and temporary disfigurement" under ORS 137.712(6)(c)(B). In concluding otherwise, the majority relies on the trial court's reference to evidence that the victim's head wound was "not just a gash that would heal up quickly" but rather "something that required a surgical intervention for it to be repaired"—which the majority treats as a rejection of defendant's assertion, during his argument about serious and temporary disfigurement,

---

[3] The trial court then proceeded to discuss defendant's lack of remorse and his assault of another person in jail while awaiting trial, before concluding with the statement "that it's appropriate for the defendant to serve the sentence under [ORS] 137.700."

[4] Appellants must challenge every basis on which the trial court actually ruled against them on an issue to avoid losing automatically, so, when there is any risk that the trial court ruled on more than one basis, the safest course is to address every possible basis. *See Roop v. Parker Northwest Paving Co.*, 194 Or App 219, 236, 94 P3d 885 (2004), *rev den*, 338 Or 374 (2005) ("[W]here plaintiffs fail to challenge the alternative basis of the trial court's ruling, we must affirm it.").

that the cut might have "healed very rapidly on its own." *See* 302 Or App at 238.

Although it is possible that the trial court meant that statement as a ruling on the "serious and temporary disfigurement" issue, it is unlikely. The court unequivocally began its ruling by stating that the injury created a "risk of death" and proceeded to explain why. In context, the statement on which the majority relies appears to have been meant to emphasize the seriousness of the wound— as further evidence that it created a risk of death—rather than to rule on the separate legal issue of "serious and temporary disfigurement." If the court meant to address *disfigurement*, rather than risk of death, it more likely would have commented on the wound's appearance than the type of medical treatment it required. *See id.* ("disfigure" means "to make less complete, perfect, or beautiful in appearance or character" (quoting *Webster's Third New Int'l Dictionary* 649 (unabridged ed 2002)).

In any event, it is at best *unclear* whether the trial court actually ruled on the "serious and temporary disfigurement" issue. The "prudential imperative" discussed in *Nix* therefore is not present, because it is not "*likely*, in the totality of the circumstances," that the trial court actually ruled on the issue. *Nix*, 236 Or App at 43 n 7 (emphasis added). As previously discussed, it is possible but not likely. Accordingly, as a procedural matter, we should not affirm on that basis. Moreover, to the extent that we have any discretion to consider an issue that the trial court *might* have ruled on, even if it is not "likely"—*see id.* (referring to "prudential" considerations)—I would not exercise that discretion to consider an issue that the parties do not believe that the trial court ruled on *and* which requires us to address a significant legal issue of first impression without meaningful briefing by defendant or any briefing at all by the state. *See* 302 Or App at 240-41 (recognizing that we are construing the term "serious and temporary disfigurement" in ORS 137.712(6)(c)(B) for the first time).

Because I do not think that we should reach the legal issue of whether the victim suffered a "serious and temporary disfigurement," given the procedural posture of

this case, I will not express any opinion on the merits of that issue, except to reiterate that it would be better to have briefing from the parties before deciding a significant legal issue of first impression.

The remaining issue is whether the victim's injury created a nonremote risk of death, ORS 137.712(6)(c)(A), as the trial court ruled that it did. Because the majority does not reach that issue, I will address it only briefly. The record shows that the victim suffered a gash on her head that bled profusely and required five staples to close, but that she did not lose consciousness or suffer any brain injury. In my view, on this record, it was speculative for the trial court to determine, apparently based on common knowledge, that the victim's head wound caused a nonremote risk of death. I simply do not think it is common knowledge what the risk of death is from such a wound. And it is the risk of death from the *injury* that is at issue. *See* ORS 137.712(6)(c) ("'Significant physical injury' means a physical injury that: (A) Creates a risk of death that is not a remote risk; * * *.").

In sum, with respect to the trial court's ruling that the victim suffered a "significant physical injury" under ORS 137.712(2)(b)(B), making defendant legally ineligible for a lesser sentence under ORS 137.712(1), I would reverse and remand for further proceedings on that issue, in addition to reversing and remanding on the conceded merger error. In my view, the trial court erred in ruling that the victim's injury "create[d] a risk of death that [wa]s not a remote risk," ORS 137.712(6)(c)(A), and, for procedural reasons, we either cannot or should not address the alternative issue of whether the victim's injury "cause[d] a serious and temporary disfigurement," ORS 137.712(6)(c)(B). I therefore respectfully dissent on the "significant physical injury" issue.